**PON WING QUONG v. UNITED STATES.**
No. 9257.

Circuit Court of Appeals, Ninth Circuit.
April 29, 1940.

Rehearing Denied June 11, 1940.

Russell P. Tyler, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and S. P. Murman, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

· This appeal arises from a judgment after conviction of appellant by a jury on three counts of a grand jury indictment for violation of the Jones-Miller Act [21 U.S.C.A. § 174]. Another person was indicted with appellant, but such person has not been apprehended. The indictments were:

The first count accuses appellant with fraudulently and knowingly importing into the United States a certain quantity of smoking opium contrary to law, as said defendant then and there knew.

The second count accuses appellant with fraudulently and knowingly facilitating the transportation of the smoking opium referred to in the first count, after its importation and contrary to law, as said defendant then and there knew.

The third count accuses appellant with fraudulently and knowingly concealing and facilitating the concealment of smoking opium after its importation into the United States of America contrary to law, as defendant then and there knew.

Appellant was in the employ of the Canton Express Company and engaged in the duties of an express man. As such he had the·privilege of entry to and from the customs corral at San Francisco, California, to pick up baggage for delivery to the owners.

The United States Customs officials had information that an attempt was under way to smuggle into the country contraband smoking opium in an identified trunk by way of the S. S. "President Coolidge", docking in San Francisco from China on or about the 22d day of June, 1939. Customs agents and inspectors had been detailed to watch the trunk, which was delivered from the ship into the corral with other baggage. It was kept under observation from its arrival until shortly before the arrest of the defendant, which happened shortly after the following occurrence as testified to by George W. Stanley, a customs guard.

During the first day the trunk reached the dock, Stanley saw the appellant and others going about their businesses in the corrals. On the next day he observed appellant working near the trunk, and to use the words of the witness, appellant "* * * backed up to the trunk, he was writing on another trunk, then he left and went directly behind that trunk so as to put his back to the trunk. I noticed his hand, and his hand was going up to the upper right corner from where I was, of course I was behind him, and I noticed his hand as though manuevering something there. He then walked away from the trunk."

Thereafter and before anyone else had approached the trunk, Stanley examined it and found a sticker glued to the corner toward which he had seen appellant move his hand. No such sticker had theretofore been on the trunk. The opening of the trunk by the customs officials, revealing the opium therein, and appellant's arrest followed shortly after.

According to testimony, which is not denied, the officers after arresting appellant took him to one of the rooms in the customs quarters and since it was about noon ·Saturday gave him the alternative of. being placed in jail or of staying in the custody of the customs officers until Monday. He chose, the latter. From time to time the customs officers questioned him about the importation of the contraband opium, but did not subject him to any grueling questioning. Appellant was visited, at his request, by his father and his sister and at one time was allowed to go to his home in company with guards. He was furnished a blanket and his sister brought him a coat, and although he did not undress he was made comfortable and slept on a sofa. There is no contention but that he was furnished ample food, in fact he was permitted to go out for it in company with the guard, nor that he was deprived of attending to his natural wants at any time. While he was not apprised of his right to remain silent nor that anything he might say could be used against him, no force or pressure or inducement of any kind was shown nor promise of immunity or leniency given. After the father's visit with him on Sunday evening, at which time the two were allowed to talk for fifteen minutes with no others present, the appellant stated that he would talk and at that time made an oral statement. The following morning appellant's statement was taken in question and answer form, reduced to writing and signed by appellant. This writing was introduced into evidence as a Government exhibit. At this time, and before the commencement of

this questioning, appellant was fully apprised of his constitutional rights, and was warned that what he would say might be used against him. Later he made a supplemental statement after again being informed as to his rights, and this statement was also introduced into evidence as a Government exhibit. In the first signed statement, the appellant said that he took the customs label off a box, kept it in his pocket overnight and affixed it to the trunk the next day. He acknowledged that he knew the trunk contained opium. In his second signed statement he said that he learned from a Chinese that a trunk with certain Chinese markings and containing opium would come in on the "Coolidge". The Chinese with whom he talked knew appellant worked in and out of the customs corral and promised "to fix him up" for aid in getting it past the customs. Appellant in his statement admits that he had taken the sticker from a suit box which had been previously examined and had passed the inspection of the customs and placed it upon the trunk. The suit box with a small portion of the sticker on it was introduced into evidence. Appellant's opportunity to take the sticker from the box was established by competent evidence. Appellant did not himself take the witness stand, nor did he offer any testimony.

It is apparent that this evidence is consistent with appellant's statements and consistent with the indictment that the appellant intended to violate the law by knowingly importing contraband opium by the device of affixing to the trunk a sticker from the examined box, which would probably avoid examination of the contents of the trunk.

It should here be stated that appellant is sought to be convicted of the substantive offense only by virtue of the statute which provides that one who aids and abets a principal in the commission of a crime is himself guilty thereof. 18 U.S.C.A. § 550.

■ Appellant filed a demurrer to the indictment which was overruled by the court and exception was reserved. Appellant refers to the demurrer in his opening brief as follows: "Appellant's general and special demurrer attacked the indictment on the grounds that each and every count of the indictment fails to state facts sufficient to constitute a public offense or a violation of the Act of the Congress of the United States known as the Jones-Miller Act, 21 U.S.C. § 174 [21 U.S.C.A. § 174] and as being uncertain and insufficient in failing to allege how or in what manner said appellant acted fraudulently, and in failing to allege essential knowledge upon the part of the defendant in counts two and three, and in other particulars."

His first assignment of error is upon this ruling as related to the first count. He claims that this count in the indictment is bad because it is couched in general terms rather than specifying the acts constituting the crime. He correctly states that the statute in defining the crime for importing any narcotic drug uses the disjunctive "or" between the two words defining the manner chosen by the importer to bring the drug in; that is, quoting from the statute, "If any person fraudulently *or* knowingly imports," etc. Again he correctly states that the indictment uses the conjunctive "and"; that is, quoting from the indictment, "If any person fraudulently *and* knowingly imports, etc.". The vice, as appellant sees it, is that since fraud is a relative term facts constituting the fraud must be alleged and this has not been done. He relies strongly upon the case of Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505. But the case is not authority for appellant's point. The opinion in the cited case clearly shows that the reason for requiring allegations of facts constituting the alleged fraud was that the mere importation of diamonds [the articles imported] was not illegal therefore in that case, in order to state an offense, it was necessary to allege the facts, such as avoidance of customs duties, which made the importation illegal.

The court said in Wong Lung Sing v. United States, 9 Cir., 1925, 3 F.2d 780, 781, "We are of opinion that the charge is sufficient, both as to illegal importation and knowledge of illegal importation. Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505, is to be distinguished. In that case the indictment used the generic expression, 'import or bring into the United States' diamonds, contrary to law. It was held that the expression 'import and bring into the United States' was vague, and did not convey the necessary information to defendant, because importing merchandise is not per se contrary to law, and could only become so when done in violation of specific statutory requirements, whereas the present statutes absolutely prohibit the importation of opium for smoking purposes."

■ No such situation was faced by the trial court in the instant case. Here the importation was alleged and it must be

remembered that 21 U.S.C.A. § 173[1] makes illegal any and all importation of smoking opium and that 21 U.S.C.A. § 181[2] creates the presumption that any such drug found in the United States has been "imported contrary to law". In the circumstances, after the Government has alleged that it has found the smoking opium in the United States the presumption applies that it has been "imported contrary to law". This presumption is a rebuttable one and covers a necessary element of the crime hence must be alleged. There is nothing further necessary to the statement of the offense. Of course the accusatory allegations must be in the count of the indictment, and they are properly set forth therein.

The first point reserved as to the second count of the indictment is exactly the same in principle as to the first count and our discussion and cited authorities there apply. The point is not well taken.

■ But there is a further objection that, "the second count fails to allege directly any knowledge on the part of said defendants * * * that said opium had been imported into the United States contrary to law", claiming that the phrase "as said defendants then and there knew" is but a recital. There is no question but that in some instances this phrase would be held as a recital and not a sufficient allegation of fact, but we hold that this does not obtain in our case. The applicable part of the count is as follows: "That at the time and place mentioned in the first count, in said Division and District, said defendants fraudulently and *knowingly* did facilitate the transportation of said lot of smoking opium, in quantity particularly described as 250 five-tael cans containing approximately 1,665 ounces of smoking opium, and the said smoking opium had been imported into the United States of America contrary to law, *as said defendants then and there knew."* [Italics supplied.]

We have checked the cited authorities upon which appellant relies and find that they do not support appellant's contention. See our opinion in Fiddelke v. United States, 9 Cir., 1931, 47 F.2d 751.

■ The appellant claims that the indictment to the third count is duplicitous. The exact question raised was considered and decided adversely to appellant's contention by this court in Yip Wah v. United States, 9 Cir., 1925, 8 F.2d 478.

After the Government called the first witness and immediately after the propounding of the first question appellant objected to the introduction of any testimony on the ground that no public offense was alleged in the indictment. The foregoing discussion as to appellant's demurrer suffices to answer this assignment of error. It is without merit.

---

[1] 21 U.S.C.A. § 173. *"Importation of narcotic drugs prohibited; exceptions; crude opium for manufacture of heroin; forfeitures.* It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; except that such amounts of crude opium and coca leaves as the commissioner of narcotics finds to be necessary to provide for medical and legitimate uses only, may be imported and brought into the United States or such territory under such regulations as the commissioner of narcotics shall prescribe, but no crude opium may be imported or brought in for the purpose of manufacturing heroin. All narcotic drugs imported under such regulations shall be subject to the duties which are now or may hereafter be imposed upon such drugs when imported.

"Any narcotic drug imported or brought into the United States or any territory under its control or jurisdiction, contrary to law, shall (1) if smoking opium or opium prepared for smoking, be seized and summarily forfeited to the United States Government without the necessity of instituting forfeiture proceedings of any character; or (2), if any other narcotic drug, be seized and forfeited to the United States Government, without regard to its value, in the manner provided by sections 514 and 515 of Title 19, or the provisions of law hereafter enacted which are amendatory of, or in substitution for, such sections. Any narcotic drug which is forfeited in a proceeding for condemnation or not claimed under such sections, or which is summarily forfeited as provided in this subdivision, shall be placed in the custody of the commissioner of narcotics and in his discretion be destroyed or delivered to some agency of the United States Government for use for medical or scientific purposes."

[2] 21 U.S.C.A. § 181. *"Presumption and burden of proof as to importation of smoking opium.* All smoking opium or opium prepared for smoking found within the United States shall be presumed to have been imported contrary to law, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

Another assignment of error is that the evidence introduced is insufficient to establish the guilt of the defendant as to any of the "crimes and offenses charged and that the motions for an instructed verdict as to each thereof should have been granted". The recitation of the evidence hereinbefore given is sufficient basis for holding the other way without restating it arguendo. There was no error here.

Appellant made motions for an instructed verdict of not guilty as to each and every count and as to each and every crime and offense charged ·at the conclusion of the Government's direct case and at the conclusion of the taking of testimony in the case, all of which were overruled. Exceptions were reserved and appellant assigns such rulings as error. We hold that there was no error here for the reasons already stated.

There are numerous assignments of error premised upon objections to testimony, objections to the introduction of exhibits and motions to strike testimony. We have examined them all and we find no error. We shall herein note but a few which we consider worthy of comment.

Appellant bases several of his objections and motions to strike upon the charge that the corpus delicti was not established by the evidence in the absence of the written confession. It is, of course, settled that the confession cannot be admitted until the corpus delicti has been established. The facts here are so simple that we say as to the assignments based upon this point that there is no need of restating the evidence in argumentative fashion to rule that the corpus delicti was amply established. However, we shall notice the point made that the corpus delicti was not proved as to the second count, i. e., that of facilitating the transportation of the opium after importation.

With the fact of importation established when the S. S. "President Coolidge" crossed the three mile limit approaching San Francisco (United States v. Caminata, D.C.Pa., 1912, 194 F. 903, and Fiddelke v. United States, supra), the problem of facilitating the transportation after such crossing of the line is presented. After the trunk was landed in the corral it was not actually moved, except by the customs officers, and if actual movement after its arrival in the corral were the requisite for the commission of the crime of facilitating transportation after importation it could not be held to have been committed. However, here the trunk containing the opium was in the act of being transported after importation from the time it left the three mile limit until it reached its intended destination in the United States, to-wit, delivered to the consignee. Anything done to make the continuance of that trip "less difficult" would constitute facilitation of its transportation. Since the term "facilitate" seems not to have any special legal meaning, the framers of this statute must have had in mind the common and ordinary definition as expressed by a standard dictionary. Quoting from Webster's Unabridged Dictionary, "facilitate" is defined as follows: "To make easy or less difficult; to free from difficulty or impediment; as to facilitate the execution of a task".

The only reason for the placing of the sticker on the trunk was to permit the trunk and its contents to pass through the customs without inspection. Certainly this act made the progress of transportation of the trunk "less difficult" and "freed it from difficulty or impediment" and in short facilitated transportation. The method of facilitation used was not one of actual physical movement at the moment but rather one related to the continuity of the trunk's present status of being in the course of transportation. It is unnecessary to more than cite a reference wherein numerous cases are cited supporting the view that temporary stoppage of goods in the stream of commerce does not interrupt the continuity of transportation. See 11 Am.Jur. p. 60, f. n. 4.

The same objection as made to the failure to prove the corpus delicti in the second count is made to the third count, as to the crime of facilitating the concealment of the opium after importation. The act of pasting the sticker upon the trunk was one which concealed the fact that the trunk contained contraband by representing that it had been inspected and was released from customs.[3] Anything done to further the

---

3 That the act of pasting this sticker on the trunk may well have led to successful evasion of inspection is shown by the testimony of Mr. Harold D. Swett, customs inspector:

"In order for persons to take baggage out of the enclosure even after the declaration has been returned to the desk, they have to go through the gate. There is a customs agent at the gate who ex-

concealment by misleading, or in any other manner avoiding the inspectors from discovering the contents thereof would constitute facilitating the concealment.

 The admission of the confession of the appellant is assigned as error. We think it was not. The trial court made a statement in the course of the trial to the effect that the admissibility of a confession, as such is a matter of law. Such statement is correct. The argument as to the admissibility should be made to the judge, and if in his opinion the facts show the statements to have been made freely, voluntarily and without compulsion or inducement of any kind, he should admit the statements into evidence as a confession. However, where there is a conflict in the facts as to whether the statements were made freely etc., the facts of the surrounding circumstances should be presented to the jury so that they may properly determine the weight to be given such evidence. The circumstances surrounding the giving of such statements act in much the same character as the demeanor of a witness present upon the witness stand and so should be presented to the jury to aid them in their judgment as to the weight to be given such evidence. While the admission into evidence of such statements as a confession may be indicative to the jury of the fact that the judge believed the statements to have been voluntarily given, it is not in the nature of usurpation of a jury function. It may be likened to the judge's stating his opinion as to the truth of a witness' testimony, but making it clear to the jury that they are the ultimate judges of the fact and of the credence to be given to such testimony. Such right of comment certainly is not questioned in the Federal courts.

We quote from Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 900, 40 L.Ed. 1090: "When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject the confession if, upon the whole evidence, they are satisfied it was not the voluntary act of the defendant [citing cases]. The question here, however, is simply upon the admissibility of the statement; and we are not prepared to hold that there was error in its admission in view of its nature and the evidence of its voluntary character, the absence of any threat, compulsion, or inducement, or assertion or indication of fear, or even of such influence as the administration of an oath has been supposed to exert."

Appellant assigns as error the giving of seven separate instructions in the court's charge to the jury. He also assigns as error the court's refusal to give twenty-six proposed instructions as offered by him. We have examined each assignment carefully and have related the criticized instructions and the proposed instructions with the whole charge given the jury and find no prejudice to the appellant. We shall refer specifically to a few of such assignments.

 Appellant thinks the following statement as found in one of the instructions constitutes error: "You are to consider the strong probabilities of the case". His argument is that "The jury must of necessity construe such language to the effect that they were entitled under the law in determining the guilt or innocence of the appellant *to speculate* as whether or no the appellant was guilty * *. *." [Italics supplied.]

Such argument fades out when the next line of the instruction is read: "A conviction is justified only when such probabilities exclude all reasonable doubt as the same has been explained to you."

After the jury had retired they returned and requested the court to answer three questions concerning the word "importation",

(1) What is the definition of "importation of contraband"?

(2) "facilitating the importation of contraband"?

(3) "abetting the importation of contraband"?

 In answer the court restated the charges in the three counts of the indictments. He then reread the statute un-

---

amines the trunk or box to ascertain the presence or non presence of this particular stamp. And if occasion should require he could further identify the trunk or baggage by going to the desk and obtaining the declaration with reference to the number of the stamp and what has been put on the declaration. If he permits the trunk or box to go through the gate he cancels the stamp.

"Q. Isn't the very purpose of putting these stamps on to enable this baggage to

der which the counts 2 and 3 were drawn.[4] He then stated, "Opium is a narcotic drug. Opium is contraband. Opium may not be imported into the United States. Here we have before us 250 cans of opium which have been unlawfully imported into the United States". He then read from Webster's Dictionary the definition of the word "import" and of the word "facilitate". After reading the definition of the word import the court stated, "I do not think it will be denied that this opium was imported into the United States from China".

Appellant assigns this comment as error. The presumption that any smoking opium found in the United States has been imported unlawfully was not rebutted. Whether it came from China or some other foreign state is of no importance.

In answer to the third question the court read the code section [18 U.S.C.A. § 550] as follows: "*'Principals' defined.* Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The only possible error to such instruction lies in the giving of that part of the statute defining the crimes referring to "possession".[5] Appellant in two other separate specifications of error claims error on this ground.

If it be conceded for argumentation only that there was no semblance of possession of the opium by appellant, what then?

█ The first paragraph of the section provides that a person against whom certain facts are shown has violated the law. What are these facts? The narcotic drug must have been fraudulently or knowingly brought into the United States contrary to law. We have heretofore explained that any smoking opium *found* in the United States is presumed to have been "imported contrary to law". The opium was so *found*. There has been no explanation made as to its presence in the United States which at all attempts to rebut this presumption. It stands as a proven fact in the case, therefore, that the opium found in the trunk was imported contrary to law. It is nowhere contended by the Government that appellant was guilty of the substantive offense of importing the opium except as explained before by virtue of the statute making one guilty of aiding and abetting a crime guilty of the crime itself. He is accused in the other counts of facilitating the transportation and of facilitation of concealment respectively. Possession of the opium as that expression is commonly understood is in neither case a requisite of guilt. In a case where the facts were in controversy it is conceivable that the jury might be confused when the instructions covering possession were given them. They might have thought possession was necessary and that the court thought there had been proof on the subject. But the evidence as introduced in this case can logically be understood in but one way— the appellant had talked with the principal, had agreed to be of help in the consummation of the forbidden act for a consideration and had used a trick well calculated to crown the scheme with success had the customs officers not been informed of the attempt to execute it. Even if the jury thought the pasting of the customs clearance sticker upon the trunk constituted momentary possession of the trunk and its contents, the evidence aside from any question of possession is ample and competent to support the finding of guilt. Under the admitted and undenied facts the jury could not have arrived at any conclusion but that the appellant was guilty.

█ There remains but one additional subject for treatment. The court instructed the jury that "All verbal admissions must be received with caution, though free,

---

go past the customs guards and to be cancelled as it passes through the gate? A. Yes."

4 21 U.S.C.A. § 174. "If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be. fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

5 See footnote No. 4, supra.

deliberate confessions of guilt are entitled to great weight".

This instruction is assigned as error. This instruction is in the very words of the Supreme Court of the United States in Wilson v. United States, 162 U.S. 613, 621, 16 S.Ct. 895, 4 L.Ed. 1090. It was not erroneous.

■ Appellant proposed and the court declined to instruct the jury as follows: "I instruct you that the weight and credibility of a confession are to be determined by the jury upon the same principles that they determine the weight and credibility of any evidence, that is, upon the consideration of all the circumstances connected therewith".

This instruction though refused was given in effect by general language in the court's instructions.

■ Appellant cites as error the refusal of the court to give the following two proposed instructions, "I instruct you that the law requires that confessions are to be received with great distrust". and "I instruct you that the law requires that confessions are to be received with the greatest caution."

The case of Wilson v. United States, supra, is authority for holding that the refusal to give these instructions was not error.

Finding that none of the many assignments of error is meritorious, the judgment is affirmed.