James Boyd **BROWN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 14543.

United States Court of Appeals
Ninth Circuit.

April 14, 1955.

Walter L. Gordon, Jr., Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Ray H. Kinnison, Norman W. Neukom, Louis Lee Abbott, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

STEPHENS, Circuit Judge.

Appellant was found guilty on each of five counts of an indictment. Count One charged that appellant and one Hollins conspired to violate Title 21 U.S.C.A. § 174.

Count Two charged that on March 4, 1953, appellant sold one ounce, 324 grains of heroin in violation of Title 21 U.S.C.A. § 174.

Count Three charged that on March 13, 1953, appellant and Hollins sold one ounce, 440 grains of heroin in violation of Title 21 U.S.C.A. § 174.

Count Four charged that on March 4, 1953, appellant received, concealed and facilitated the transportation of one ounce, 324 grains of heroin in violation of Title 21 U.S.C.A. § 174.

Count Five charged that on March 13, 1953, appellant and Hollins received, concealed, and facilitated the transportation of one ounce, 440 grains of heroin in violation of Title 21 U.S.C.A. § 174.

Appellant received concurrent sentences of five years and a fine of $250.00 on on each of the above counts.

On appeal, this court reversed the judgment and returned the cause to the court below for retrial because of certain remarks made by the trial judge in presence of the jury. At the second trial, Count One (charging conspiracy) was deleted and appellant was found guilty on Counts Two, Three, Four, and Five. Consecutive sentences of ten years and $2,000.00 fines were imposed on each of the four counts. From that judgment this appeal is brought.

At both trials below the government's chief witness was one Frank "Sleepy" Stafford, a known narcotic user who was employed by the Bureau of Narcotics as a paid informer. During the interim between trials, Stafford met a violent death and at the second trial his testimony was read into the record.

### Facts

As a result of Stafford's telephoned request, Appellant Brown came to Stafford's house where, within the hearing of two narcotics officers, Stafford asked Brown to sell him some heroin. Brown was unable to consummate a sale at this time because his supply was in transit, but he agreed to call Stafford as soon as he received any "stuff". Subsequently, Brown contacted Stafford and a meeting was arranged for March 4, 1953. Stafford was furnished with $600.00 by narcotics agents and proceeded to the meeting place. Brown drove up in his car and Stafford entered. The two drove around and Stafford gave the currency to Brown. Brown then drove to an indicated street intersection where a man unknown to Stafford waited in a parked car. Brown then told this man that Stafford was the one who wanted the heroin and directed the man to deliver it to Stafford later on. Thereupon Brown drove Stafford back to his own car and Stafford drove back to the unidentified man who directed him to a hollow in a tree and there Stafford discovered the heroin cached.

On March 13, 1953, Stafford by prearrangement again met Brown. Again he had been furnished with $600.00 by narcotics agents. After driving some distance, Stafford gave the money to Brown. Shortly thereafter two women drove up and handed a package to Brown. From this package Stafford was given two packets of heroin.

### The Indictment

Appellant attacks Counts Two, Three, Four, and Five of the indictment on the ground that they fail to allege one of the necessary elements of the offense, viz.: they fail to state that the narcotics drug referred to was imported contrary to law. (Since the same argument is directed against all four counts, our discussion will use Count Two as an example.)

Title 21 U.S.C.A. § 174[1] provides in applicable part:

"Whoever fraudulently or knowingly imports * * * any narcotic drug * * * contrary to law, or * * * sells * * * any such narcotic drug after being imported * * * knowing the same to have been imported contrary to law * * shall be fined * * * and imprisoned * * *."

Appellant contends that under this statute a valid indictment must allege not only that defendant sold the narcotic drug *knowing* that it had been imported contrary to law, but also that the drug *was* imported contrary to law.

It is necessary to go no further than the indictment itself to point out the error in appellant's argument. Count Two thereof states:

"On or about March 4, 1953, in Los Angeles County, California, in the Central Division of the Southern District of California, Defendant James Boyd Brown did, after importation, knowingly and unlawfully sell to Frank Stafford a certain narcotic drug, namely: approxi-

1. Title 21 U.S.C.A. § 174; Feb. 9, 1909, c. 100, § 2(c), 35 Stat. 614; Jan. 17, 1914, c. 9, 38 Stat. 275; May 26, 1922, c. 202, § 1, 42 Stat. 596; June 7, 1924, c. 352, 43 Stat. 657; Nov. 2, 1951, c. 666, §§ 1, 5(1), 65 Stat. 767.

mately 1 ounce, 324 grains of heroin, *which said heroin,* as the defendant then and there well knew, *had been imported into the United States of America contrary to law,* in violation of United States Code, Title 21, Section 174." [2] [Emphasis added.]

The wording of the indictment is not unique in this respect and this court has repeatedly upheld the sufficiency of similar indictments.[3]

In logic it would appear that if defendants knew the drugs were imported contrary to law, the fact that they actually were imported contrary to law is inherent therein. Read in its ordinary sense, the instant indictment contains an express statement not only that the heroin was imported into the United States contrary to law but also that defendant then and there well knew that said heroin was imported into the United States contrary to law.

Appellant makes the further argument that since each of the various acts proscribed by Title 21 U.S.C.A. § 174 constitutes a separate offense, Counts Three, Four, and Five are defective inasmuch as each states more than one offense, viz.: Count Three charges that appellant and another did knowingly and unlawfully:

"sell * * * and knowingly assist in so doing,"

a certain drug; Count Four charges appellant did knowingly and unlawfully:

"receive, conceal, and facilitate the transportation of, a certain narcotic drug,"

and Count Five charges that appellant and another did knowingly and unlawfully:

"receive, conceal, and facilitate the transportation of, a certain narcotic drug, * * * and knowingly assist in so doing * * *."

It is true, as appellant urges, that offenses created by statute as well as offenses at common law, must be described in such detail that the accused is informed of the charge against him.[4] But where, as here, a statute creating an offense sets forth fully, directly, and expressly, all of the essential elements necessary to constitute the crime intended to be punished, it is sufficient if the indictment charges the offense in substantially the words of the statute.[5] The precise point urged here was decided contrary to appellant's contention in Pon Wing Quong v. United States, 9 Cir., 1940, 111 F.2d 751. See, also, Yip Wah v. United States, 9 Cir., 1925, 8 F.2d 478. The validity of the indictment being established, we proceed to consider the sufficiency of the evidence.

Sufficiency of the Evidence

The last paragraph of Section 174, Title 21 U.S.C.A., reads as follows:

"Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the pos-

2. Count Three is identical with Count Two except that it concerns the transaction of March 13, 1953. Counts Four and Five are substantially the same but involve the receipt, concealment and facilitation of the transportation of the drug on March 4 and 13, 1953.

3. Pon Wing Quong v. United States, 9 Cir., 1940, 111 F.2d 751; Fiddelke v. United States, 9 Cir., 1931, 47 F.2d 751; Parmagini v. United States, 9 Cir., 1930, 42 F.2d 721; Foster v. United States, 9 Cir., 1926, 11 F.2d 100; Lee Tung v. United States, 9 Cir., 1925, 7 F.2d 111; Wong Lung Sing v. United States, 9 Cir., 1925, 3 F.2d 780.

4. United States v. Cook, 1872, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538; United States v. Crummer, 10 Cir., 1945, 151 F.2d 958.

5. United States v. The Brig Neurea, 1856, 19 How. 92, 60 U.S. 92, 15 L.Ed. 531; Carter v. United States, 10 Cir., 1949, 173 F.2d 684; Sutton v. United States, 5 Cir., 1946, 157 F.2d 661; United States v. Crummer, 10 Cir., 1945, 151 F.2d 958; Azuma Kubo v. United States, 9 Cir., 1929, 31 F.2d 89; Stubbs v. United States, 9 Cir., 1924, 1 F.2d 837; Young v. United States, 9 Cir., 1921, 272 F. 967.

session to the satisfaction of the jury."

█ It is the contention of appellant that the evidence is insufficient to sustain the judgment, inasmuch as it is claimed there is no proof that appellant ever had possession of the narcotics. But there is no charge that he ever had possession of the narcotics. Possession is not required for conviction of the offenses of which appellant was charged and convicted.[6] The record reveals that Stafford paid money to appellant; that appellant then introduced him to a man and directed the man to deliver to Stafford the agreed upon quantity of heroin; that on another occasion after negotiating with appellant, Stafford paid him the agreed sum for heroin, whereupon two women appeared and actually handed appellant a package containing narcotics. In Mullaney v. United States, 9 Cir., 1936, 82 F.2d 638, 642, this court approved an instruction of the trial court that " 'possession of a thing means having in one's control or under one's dominion' ". It is not necessary that possession be immediate or exclusive. Mullaney v. United States, supra; Borgfeldt v. United States, 9 Cir., 1933, 67 F.2d 967.

██ While it is true that Stafford's reputation was not clean, this fact could only affect the credibility and the weight of his testimony, and not his competency as a witness.[7] It cannot be said that the verdict is not supported by competent and substantial evidence.[8]

### Alleged Misconduct

After the reading of the testimony given at the former trial by the deceased witness Stafford, appellant called several witnesses whose testimony was calculated to impeach Stafford's reputation for truthfulness, honesty, and integrity. The United States attorney was vigorous in his cross examination of these witnesses and stressed the fact that, while all of them were available, none of them had come forward at the former trial to denounce Stafford's integrity during his lifetime. Appellant asserts that this constitutes prejudicial misconduct;[9] however, the record does not disclose that such contention was even called to the attention of the trial court or voiced at all, prior to this appeal.

 Rule 52 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides:

"(a) Harmless Error. Any error, defect, irregularity or variance

6. United States v. Brown, 7 Cir., 1953, 207 F.2d 310.

7. Trice v. United States, 9 Cir., 1954, 211 F.2d 513; Henry v. United States, 9 Cir., 1954, 215 F.2d 639.

8. Hemphill v. United States, 9 Cir., 1941, 120 F.2d 115; Abrams v. United States, 1919, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173.

9. Record on Appeal, pp. 193, 201, 207, 219:
 "Mr. Neukom: I object to that, your Honor, upon the ground that no effort was made to impeach the testimony of Stafford during his lifetime and I do not think it is a material issue in this case."
 " * * *
 "Q. Isn't it true that you are testifying about Mr. Stafford because you know his lips are sealed?
 "A. No.
 "Q. And he can't answer you?
 "A. No.
 " * * *

"Q. You knew of Mr. Brown, didn't you?
 "A. I did.
 "Q. And you had had occasion to hear about him in connection with police work, hadn't you?
 "A. No.
 " * * *
 "Q. As a matter of fact, Mr. Ayres, aren't you actually testifying in this court here because you are a good friend of Mr. Gordon [appellant's counsel] and you want to help Mr. Gordon's client out?
 "A. I am a good friend to everybody, not singling anyone out.
 "Q. Not a very good friend of the dead Mr. Stafford, are you?
 "A. I wasn't his enemy.
 "Q. You were not willing to testify against his reputation when he was alive, were you?
 "A. I was. I was available."

which does not affect substantial rights shall be disregarded.

"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

See Mitchell v. United States, 8 Cir., 1954, 208 F.2d 854, 857.

We think the government's attorney's question, to-wit,

"Q. As a matter of fact, Mr. Ayres, aren't you actually testifying in this court here because you are a good friend of Mr. Gordon [appellant's counsel] and you want to help Mr. Gordon's client out?"

was highly improper as it not only amounted to a charge of perjury against the witness, but was a very serious reflection upon the integrity of Mr. Gordon who is, we are happy to say, an attorney of very high standing at this bar. If the question quoted had been put to a witness who had testified in any way as to the facts of the case without good grounds therefor a different view might be taken. As it was not so directed and neither side pressed the matter further, we think the jury could be trusted to decide the guilt or innocence upon the factual evidence of the charges. As stated by this court in Iva Ikuko Toguri D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, 367,

"Our system of jurisprudence properly makes it a matter primarily for the discretion of the trial court to determine whether prejudicial misconduct has occurred. An appellate court will not review the exercise of the trial court's discretion in such a matter unless the misconduct and prejudice is so clear that it can be said that the trial judge has been guilty of an abuse of discretion."

**The Jury Instruction**

Appellant objects to one of the jury instructions given by the court. It is not necessary to discuss the merit of the disputed instruction inasmuch as no objection to it was made by appellant prior to the time the jury retired.

Rule 30 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides in material part:

" * * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict * * *."

And this court recently stated in Enriquez v. United States, 9 Cir., 1951, 188 F.2d 313, 316: [10]

"We may say that Rule 30 is not designed as a mere trap for the unwary. Painstaking compliance with its requirements, although not an easy matter for the lawyer, is of the very essence of the orderly administration of criminal justice."

**The Sentences**

The subject stressed on this appeal is the severity of the sentences meted out to appellant. And he urges us to reduce and modify the sentences.

"If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." Gurera v. United States, 8 Cir., 1930, 40 F.2d 338, 340. [11]

The case of Bates v. United States, C.C. 1881, 10 F. 92, cited to the contrary by appellant, no longer states the law. This court, in commenting on the Bates case, has said:

"It is true that in United States v. Wynn, C.C., 11 F. 57, and Bates v. United States, C.C., 10 F. 92, it was

10. See, also, Kobey v. United States, 9 Cir., 1953, 208 F.2d 583; Cosenza v. United States, 9 Cir., 1952, 195 F.2d 177.

11. United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 604 et seq. See, also, Tomoya Kawakita v. United States, 9 Cir., 1951, 190 F.2d 506; Smith v. United States, 9 Cir., 1925, 3 F.2d 1021 (memorandum opinion); Holmes v. United States, 8 Cir., 1943, 134 F.2d 125; United States v. Kapsalis, 7 Cir., 1954, 214 F.2d 677.

held that a Circuit Court, on appeal from a District Court, was not bound to impose the same sentence as was imposed by the court below; but these rulings were made in view of the peculiar language of the third section of the act of March 3, 1879 (20 Stat. 354, c. 176), which provided that: 'In case of an affirmance of the judgment of the District Court, the Circuit Court shall proceed to pronounce final sentence and to award execution thereon.'

"There is no such provision in the act creating the Circuit Court of Appeals. Those courts are given only appellate jurisdiction to review, by appeal or by writ of error, final decision in the District Court." Freeman v. United States, 9 Cir., 1917, 243 F. 353, 357.

See, also, United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, note 25 at page 604 et seq.

Affirmed.