Frank Anthony CELLINO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16178.

United States Court of Appeals Ninth Circuit.

March 14, 1960.

942

Joseph Galea, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, Loyd W. Reed, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

Appellant, Frank Anthony Cellino, was found guilty by a jury of selling and facilitating the sale of heroin, knowing the heroin to have been imported into the United States contrary to law, in violation of Title 21 U.S.C.A. § 174.[1] The indictment named appellant and one Joe Bruno as defendants, appellant being charged under one count and Bruno under four counts.

---

1. This section reads in pertinent part as follows:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States * * * contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Appellant having been found guilty by the jury, the evidence must be viewed in the light most favorable to the Government. Appellant's participation in the offense may be summarized as follows:

Raymond Velasquez, a deputy sheriff of Los Angeles County, acting as an undercover agent, and Bobby Ulrey, a parole violater in his custody, approached appellant, and Ulrey told appellant that they would like to "pick up", i. e., obtain some heroin. Appellant replied that he did not have any "stuff", but he would take them to "the man that did." Appellant entered Velasquez's car with Velasquez and Ulrey, and appellant directed Velasquez to drive to the corner of Narva and Mission Streets. Appellant there told Velasquez and Ulrey to wait in the car. Appellant went around the corner and out of the sight of Velasquez and Ulrey. In two or three minutes Bruno came to the Velasquez car alone, and said, "How much do you guys want to pick up?" After some conversation and movement about the general area, all in the absence of appellant, Velasquez and Bruno negotiated a sale, and Velasquez paid Bruno $100.

Bruno then directed Velasquez and Ulrey to the corner of Narva and Workman Streets, and instructed them to go into a drugstore and wait for him. In the drugstore they met appellant, who was having a cup of coffee. Velasquez said to appellant that he hoped "Bruno wouldn't burn me." Velasquez explained that burning means "to go away with your money and never come back" or to "give some substitute in lieu of the narcotics." Appellant replied that Bruno was "a good man, he doesn't do those kind of things", and that he was sure Bruno would be back with the narcotics. In ten or fifteen minutes Bruno did return and, in the presence of Ulrey and appellant, handed Velasquez six small white packets containing heroin.[2]

Under these facts appellant clearly "facilitated" the sale by Bruno.[3] The primary question on this appeal is whether the United States may rely upon the statutory presumption arising from possession to establish that the heroin was imported contrary to law and that appellant knew that it was so imported.

Possession is not an element of the offense charged. Rather, proof of possession in "the defendant" is deemed sufficient evidence to authorize conviction in the absence of satisfactory explanation.[4] In other words, proof of possession avoids the necessity of proving both illegal importation and the defendant's knowledge thereof. But under the ex-

2. Called as a witness on behalf of appellant, Velasquez testified:

"Q. Was Cellino present when Bruno gave you these narcotics? A. Yes, sir.

"Q. Where was he? A. I don't recall his exact position, but he was in the group there.

"Q. What do you mean he was in the group? A. Mr. Ulrey was on one side, I recall now, Mr. Ulrey was on Mr. Cellino's side, I was seated to his right at the end of the fountain. Mr. Bruno walked in and handed me the six paper packets.

"Q. Was there anyone else in the drug store? A. Yes. Several other persons.

"Q. How many? A. I don't recall, sir. Numerous persons sitting at the bar, waiting at the bar, and the druggist, people like that. I didn't take notice."

3. This court held in Pon Wing Quong v. United States, 9 Cir., 1940, 111 F.2d 751, 756, that the framers of Section 174 in using the word "facilitate", "must have had in mind the common and ordinary definition as expressed by a standard dictionary. Quoting from Webster's Unabridged Dictionary 'facilitate' is defined as follows: 'To make easy or less difficult; to free from difficulty or impediment; as to facilitate the execution of a task.'"

4. The statute makes "possession of the prohibited article prima facie evidence of guilt." Yee Hem v. United States, 1925, 268 U.S. 178, 185, 45 S.Ct. 470, 472, 69 L.Ed. 904. It "does not define the substantive offenses; it deals with their proof. It merely makes proof of possession presumptive evidence, prima facie, of the facts essential to make out a case." Corollo v. Dutton, 5 Cir., 1933, 63 F.2d 7, 8. See also United States v. Brown, 7 Cir., 1953, 207 F.2d 310, 312; Velasquez v. United States, 10 Cir., 1957, 244 F.2d 416.

press provision of § 174 "the defendant" must be shown "to have or have had possession." [5]

It is not disputed that Bruno had possession of the narcotics. Appellant contends, however, that there is no evidence that he ever had possession, and that the Government may not rely upon possession in Bruno to prove illegal importation or knowledge thereof as to appellant, since the presumption arises only where "the defendant is shown to have or to have had possession of the narcotics drug."

Title 18 U.S.C. § 2 reads: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." The Government contends that the possession required by § 174 need "not be that of the person convicted" and that upon proof that the appellant "facilitated" or "aided and abetted" in the sale, possession in his codefendant Bruno was then sufficient to make the presumption effective against appellant.

The Government relies primarily upon United States v. Cohen, 2 Cir., 1941, 124 F.2d 164, 165, certiorari denied Bernstein v. United States, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210, where the court said:

"Under the first statute we have quoted (21 U.S.C. § 174) it was only necessary to show possession of the narcotics to establish guilt and under the second statute (18 U.S.C. § 2), making an abettor a principal, it was not necessary that each of the defendants should have had the narcotics, but only that one or more of them had possession while the others aided in the illicit transaction to which that possession was incidental." [6]

This excerpt from United States v. Cohen was quoted with approval in United States v. Chiarelli, 7 Cir., 1951, 192 F.2d

---

5. In its charge to the jury after specifying the elements of the offense and quoting the provision of § 174, relative to possession, the court said in part:

"As I have stated, a defendant on trial may overcome inferences arising against him from actual or constructive possession of a narcotic drug by facts and circumstances and by satisfactory proof that in his case possession of narcotics did not involve a violation of the statute, either because the narcotics were not imported contrary to law or because he had no knowledge of unlawful importation.

\* \* \* \* \*

"Any evidence which satisfies the jury that possession of a narcotic drug was innocent possession, constitutes a sufficient explanation under the statute.

"Despite the fact that the indictment contains the allegations that the narcotic drug involved had been imported into the United States contrary to law, and that the defendants knew such to be the fact, nevertheless, the statute makes it unnecessary for the government to offer any evidence in support of the charge as to these elements if the government shows that the defendants were in constructive or actual possession of the narcotic. Actual or constructive possession of narcotics gives rise to an inference that the narcotics were imported con-

trary to law and to further inference that the person in possession had knowledge of such unlawful importation. It is then incumbent upon the defendants to go forward with the evidence and show that they came into possession of the narcotic legally. In this connection, I charge you that if you find defendants had in their possession the forbidden drug, namely, the narcotic drug, such possession, actual or constructive, alone would authorize conviction unless such possession is explained to your satisfaction."

No exceptions were taken by appellant to the court's charge.

6. On the other hand it was held in Willsman v. United States, 8 Cir., 1923, 286 F. 852, 855, in a prosecution under the Harrison Anti-Narcotic Act, that the possession of the narcotic "to be incriminating, must be personal and exclusive" and that the possession of the principal would not in itself constitute possession in the person aiding and abetting the sale. The statutory presumption in that case read: " \* \* \* the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found." This is not in accord with the cases construing § 174.

528, certiorari denied 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683.

While the language quoted supports the Government's position, it appears from the recital of facts in both the Cohen and Chiarelli cases that there was some evidence of possession in each defendant charged. In the Cohen case each of the defendants had handled at least part of the narcotics referred to in each count of the indictment, and there was proof that each defendant was to share in the proceeds of the sale. In the Chiarelli case there was evidence that appellant was driving his car, accompanied by his co-defendant, who left appellant's car with the heroin, and that appellant's fingerprints were found upon two envelopes containing the heroin.

 The authorities are uniform in holding that actual physical possession is not required under Section 174. As this court said in Pitta v. United States, 9 Cir., 1947, 164 F.2d 601, 602: "Possession of any sort is sufficient to raise the presumption and to place upon the accused the burden of explaining the possession to the satisfaction of the jury." And in Brown v. United States, 9 Cir., 1955, 222 F.2d 293, 297, the court said: "In Mullaney v. United States, 9 Cir. 1936, 82 F.2d 638, 642, this court approved an instruction of the trial court that 'possession of a thing means having in one's control or under one's dominion'. It is not necessary that possession be immediate or exclusive."[7] It is clear also that possession may be proven by circumstantial evidence.[8]

 Where a defendant negotiates a sale and receives the purchase price, he has possession through dominion and control, even though delivery is made by another and there is no evidence the seller ever had actual possession. In United States v. Malfi, 3 Cir., 1959, 264 F.2d 147, for example, Malfi negotiated the sale, received payment, and heroin was subsequently delivered in accordance with his commitment, although the defendant himself was out of the state when the delivery was made and there was no evidence the heroin had ever been in his physical possession.[9]

It has been held in two cases, with a dissent in each case, that fingerprints of the defendant on the package containing heroin is sufficient in itself to show possession and justify conviction under Section 174. This court so held in Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391, 393, where the only evidence against the appellant was the testimony of the government fingerprint expert that the appellant's "fingerprint was placed on the envelope at a time when it contained a powdery substance"; that heroin was a powdery substance; and that the print was placed on the envelope not more than four weeks prior to the expert's examination. In United States v. Pisano, 7 Cir., 1951, 193 F.2d 361, 365, 31 A.L.R.2d 409, the narcotics were found in a suitcase in a room occupied by appellant's co-defendant, one Ginnone. The suitcase contained, among other things, six envelopes containing heroin. Pisano's fingerprints were found upon one of the packages containing heroin, as well as upon some wrapping paper found in the suitcase. The court held that this was sufficient to show that the defendant had

---

**7.** In Brown v. United States the defendant negotiated the sale of heroin to one Stafford and received the payment therefor. On one occasion defendant told an unidentified man in Stafford's presence to deliver the heroin to Stafford, and the man directed Stafford to the hollow of a tree, where Stafford found the heroin. On the other occasion, after delivery of the money to defendant, two women drove up and handed a package to defendant. From this package defendant gave Stafford two packets of heroin. Judgment of conviction was affirmed.

**8.** United States v. Pisano, 7 Cir., 1951, 193 F.2d 355, 359, 31 A.L.R.2d 409; United States v. Pinna, 7 Cir., 1956, 229 F.2d 216, 218; United States v. La Rocca, 2 Cir., 1955, 224 F.2d 859; United States v. Malfi, 3 Cir., 1959, 264 F.2d 147, 150.

**9.** See also United States v. La Rocca, supra note 8; Brown v. United States, 9 Cir., 1955, 222 F.2d 293.

handled the package and paper and "in order to do so, he must have had possession"; and that the unexplained handling was sufficient to justify the finding of illegal possession.[10]

In United States v. Maroy, 7 Cir., 1957, 248 F.2d 663, certiorari denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414, the sale of heroin was made by the appellant's co-defendant and employee. When the appellant was approached by the prospective purchaser, the appellant (a negro) replied, "I don't do no business with no grays (meaning Caucasians) anyway. So if you want to talk about it, you have got to see my man." He stated that "his man" was Edward Minor. The purchase was subsequently made from Minor. The appellant contended that there was no evidence that he ever had possession of the heroin. In holding against this contention, the court said in part: "However, the undisputed evidence is that his co-defendant below, Edward Minor, was in his employ, and he was in possession and made the illegal sale to both Gjertsen and Turnbou. The facts are that Cross introduced Maroy to both Gjertsen and Turnbou and when they told him they wanted to buy some heroin he turned them over to his employee, Edward Minor, by whom the illegal delivery was made. We can not say that the jury was unwarranted in finding that the defendant-appellant, Jessie Maroy, aided and abetted Minor in the illegal transaction and they were acting in concert in the illegal undertaking (citing United States v. Chiarelli, supra), and that the possession of the heroin by Minor was possession by Maroy as well. (Citing United States v. Cohen, supra). Whether the evidence was sufficient to establish guilt beyond a reasonable doubt, or whether it was equally consistent with innocence or guilt, were matters for the determination of the jury." 248 F.2d at page 666.

■ Is the evidence sufficient to show constructive possession in appellant? Appellant was approached for the ⌐..press purpose of purchasing heroin. He claimed that he did not have any of the "stuff", but volunteered to take the prospective purchasers to "the man who did." He took them to a place where very shortly they were contacted by Bruno. True, Bruno negotiated the sale and received payment in appellant's absence; but prior to delivery Bruno directed the purchasers to the drugstore where they found appellant. There appellant vouched for Bruno, assuring the purchasers that Bruno would be back with the narcotics. Within a few minutes Bruno came to the drugstore and delivered the heroin in appellant's presence. In other words appellant not only facilitated the sale by Bruno, but after Bruno had negotiated the sale, appellant assured the purchasers that Bruno would make delivery and was present when Bruno did in fact deliver the heroin. It is our conclusion that the circumstantial evidence of dominion and control is sufficient to justify a finding by the jury of constructive possession in appellant within the meaning of Section 174.

■■ Appellant next contends that certain questions asked appellant by the United States attorney were calculated to influence the jury and were prejudicial. On cross-examination appellant admitted that he had been convicted of two felonies. He was then asked where he had met Ulrey and responded that they had met in San Quentin, where they were cell partners. Without objection, he was interrogated further regarding their acquaintance in San Quentin. Appellant was next asked how long it had been since he was in San Quentin, and was permitted to answer over objection. After appellant had admitted that he had been convicted of the crime of assault with a

---

10. The dissenting opinion called attention to the fact that "there was no proof as to any connection between the two defendants or that Pisano had any dominion, interest or control in or over the room where the exhibits were found;" and that there was no proof as to when the fingerprint was made upon the exhibits, the expert having testified that they were "relatively fresh", but "might have been there for a month or more" and would not have been there for "more than five or six months."

deadly weapon, he was asked "the circumstances involved in this assault." An objection to this question was sustained. This question was clearly improper, but it was not answered.

There was no motion for mistrial or request for a jury instruction that any of the testimony be disregarded. A similar situation was considered by this court in Alberty v. United States, 9 Cir., 1937, 91 F.2d 461, 463, where questions were asked which could well be "deemed improper", but with respect to which "the appellant apparently was satisfied with a negative answer and did nothing." The court said:

> " * * * Whatever hesitation counsel may have regarding a claim of misconduct of a trial judge, there should be none in claiming it against the prosecutor. It should be made at once. The court should be given the opportunity for instant correction and, if the offense be sufficiently hurtful, declare a mistrial. Counsel cannot occupy the instruments of justice, the court and jury, in an extended trial and, without objection or motion for relief, raise such questions on appeal." [11]

Nor does it appear to us that these questions and answers affected the substantial rights of the appellant to a fair trial, or resulted in a miscarriage of justice.[12]

It is appellant's final contention that he was convicted as the result of evidence illegally obtained by reason of the fact that the government witness Velasquez participated in the commission of the crime in furnishing transportation of appellant "from Tony's Cafe to the drug store where the sale of heroin was consummated."

Appellant did not raise the defense of entrapment at the trial or request that this issue be submitted to the jury. The defense was raised by appellant's co-defendant Bruno. The court advised Bruno's counsel what instruction he would give the jury on entrapment, commenting that he knew that the defendant Cellino did not want an instruction on entrapment. There was no response from appellant's counsel, and Bruno's counsel decided that he did not desire the proposed instruction. No exceptions were taken by appellant to any of the court's instructions. Under these circumstances the defense of entrapment may not properly be raised on appeal.[13]

Even if the defense were properly before this court, there was no entrapment. In Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 212, 77 L.Ed. 413, the leading case on entrapment, the Court said in part: "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and strategem may be employed to catch those engaged in criminal enterprises." [14]

Judgment affirmed.

---

11. This statement was quoted with approval in the recent case of Harris v. United States, 9 Cir., 1959, 261 F.2d 897.

12. See Rule 52(a) Federal Rules of Criminal Procedure, 18 U.S.C.; Kasper v. United States, 9 Cir., 1955, 225 F.2d 275, 279.

13. See United States v. Ginsburg, 7 Cir., 1938, 96 F.2d 882, certiorari denied 305 U.S. 620, 59 S.Ct. 81, 83 L.Ed. 396.

14. See also Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848; Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859; Trice v. United States, 9 Cir., 1954, 211 F.2d 513, 516, certiorari denied 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707; Bruno v. United States, 9 Cir., 1958, 259 F.2d 8, 11.