### BATES *v.* UNITED STATES.

*(Circuit Court, N. D. Illinois. December, 1881.)*

1. CRIMINAL PLEADING—NON-MAILABLE MATTER—REV. ST. § 3893.

    It is sufficient, in an indictment under section 3893 of the Revised Statutes, to describe the particular book, paper, pamphlet, etc., so as to identify it, and then allege, in the language of the statute, that it was of the character there described.

2. NON-MAILABLE MATTER—"DECOY LETTERS"—FICTITIOUS NAME.

    The mailing of non-mailable matter to a person under a fictitious name, who receives it, is an offence against this statute.

3. SAME—MAILING BY AGENT SUFFICIENT.

    Such non-mailable matter need not have been deposited in the mail by the defendant in person; if he authorized it to be mailed he is guilty of an offence against this statute.

4. SAME—INEFFECTIVENESS OF THE THING SENT, NO DEFENCE.

> The fact that what was sent, in answer to a letter asking for something to procure abortion or prevent conception, would not, of itself, have that effect, is no defence to an indictment under this statute.

5. PRACTICE—ERROR TO DISTRICT COURT—AFFIRMANCE OF JUDGMENT—DISCRETION AS TO DEGREE OF PUNISHMENT.

> In a criminal case, upon error to the district court the circuit court, though affirming the judgment of the lower court, is not bound to impose the same sentence; it can award execution in conformity with its own opinion, derived from the facts apparent upon the record, as to the degree of punishment which should be imposed.

Error to the District Court.

*Osgood & Riggle* and *Frank Baker,* for plaintiff in error.

*Joseph B. Leake,* Dist. Atty., for the United States.

DRUMMOND, C. J. This was an indictment against the plaintiff in error, charging him with violating different provisions of section 3893 of the Revised Statutes. He was found guilty by the jury and sentenced to fine and imprisonment. A motion in arrest of the sentence on account of the insufficiency of the indictment was made in the district court, and the refusal of the court to grant the motion is one of the principal errors relied on in this court. The section of the statute referred to, as amended by the act of July 12, 1876, declares the following shall be non-mailable matter: Any book, pamphlet, picture, paper, writing, print, or other publication which is obscene, lewd, lascivious, or indecent, or any article or thing designed or intended for the prevention of conception, or procuring abortion, or any article or thing intended or adapted for any indecent or immoral use, or any written or printed card, circular, book, pamphlet, advertisement, or notice of any kind giving information directly or indirectly where, or how, or of whom, or by what means any of these matters, articles, or things before mentioned may be obtained or made, or any letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene, or lascivious delineations, epithets, terms, or language may be written or printed; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared to be non-mailable matter, is deemed guilty of a misdemeanor, and liable for every offence to a fine or imprisonment at hard labor, or both.

One of the counts of the indictment charges the defendant with sending by mail a book, the title of which is given, and it is alleged that it was of so indecent and obscene a character that it was improper to state its contents. Various other counts of the indictment

allege that a letter addressed to a particular person, naming him, contained indecent matter. Other counts state that circulars were sent by mail from and to a place named and to a particular person, naming him, giving information where the article referred to [to prevent conception] could be obtained. The main ground of objection to the various counts of the indictment is that they do not set forth in language what was contained in the book, in the letters, or in the circulars. It is said that whether a book, or letter, or circular is within the terms of the law is a conclusion, and the court must be permitted to judge by the use of the special language, or if the case be a picture, or representation, or article, by a copy, or description of the same. I think this objection is not well taken. The object of the law is to exclude certain articles from the mail. If a book, pamphlet, picture, representation, or article, it is sufficient as to that to describe it so as to identify it, or by stating to whom it was addressed, and then to allege that it is within the terms of the statute, as that it is an obscene book, pamphlet, paper, print, picture, or otherwise, or an indecent thing. This is a rule which has been established by the supreme court of the United States in relation to offences against the statute which prohibits interference with or the opening of letters entrusted to the mail by persons other than those to whom they are addressed, (*U. S.* v. *Mills*, 7 Pet. 138;) so that I think it is sufficient, in an indictment under section 3893, to describe the particular book, paper, pamphlet, etc., so as to identify the same, and then allege, in the language of the statute, that it was of the character there described. Consequently, a count which declares that the plaintiff in error caused to be deposited in a post-office of the United States, (naming it,) for mailing and delivery to the address of a certain person, (naming it and him,) an envelope then and there containing a printed advertisement and a written letter, which together were then and there a notice giving information where, how, and of whom might be obtained an article (naming it) designed and intended for the prevention of conception, was sufficient.

An objection was also taken because these various communications were sent through the mail in consequence of what are called "decoy letters," addressed to the plaintiff in error. The fact was that a detective of the post-office department did send letters to the plaintiff in error under fictitious names, but he was requested to send the communications under fictitious names, and they were received by the detective under these various names. It was the case, therefore, where a person used another name to cause a communication to be

sent by the mail to him under that name, and such communications were accordingly so received. They were, therefore, communications sent to a real person under a fictitious name, and of course it was as much an offence against this statute for the plaintiff in error to cause non-mailable matter to be deposited for mailing as though there had been no fiction in the case.

It is also objected that the district court erred in admitting testimony relating to an article transmitted by express. That testimony was admitted on the assumption that it was sent by the plaintiff in error in answer to a letter addressed to him, and simply for the purpose of explaining the facts connected with the offences charged in the indictment, and not constituting an offence in itself, which, of course, it was not, under this statute. This testimony was received, under proper caution to the jury, with a statement explanatory of the reason why and for what it was admitted, and I think could not have prejudiced the jury against the defendant.

It was also objected that the district court refused to allow the defendant to prove that certain pills which were sent by mail would not, of themselves, prevent conception or procure abortion. I think the ruling of the district court was correct upon that point. The language of the statute is not that the article must necessarily procure abortion or prevent conception, but that it is designed or intended to procure the one or to prevent the other; and those pills were sent in answer to a letter asking for something which might have that effect, and they were sent with the statement that they were just what the writer wanted.

It is further objected that the deposit of the book, letters, circulars, etc., in the mail was not done by the plaintiff in error himself, but by another person. The language of the statute shows clearly that it was intended to prevent any one from violating the law by another as well as by himself, and the jury were specially instructed by the district court that they must be satisfied that the act done was authorized by the plaintiff in error; in other words, that he caused it to be done through another.

The district court was requested by the plaintiff in error to give numerous instructions which in terms were refused by the court, but the court instructed the jury generally upon the law of the case, and so far as there was anything material in the instructions asked for in favor of the plaintiff in error which the law justified the court in giving, they were given by the court, and I cannot see that there was any error in this respect. On the whole, I am of opinion that the judgment

of the district court must stand and be affirmed as to the rulings made during the trial.

This being so, it is insisted by the district attorney that this court cannot change in any way the punishment which was imposed upon the plaintiff in error by the district court; but in proceeding to pronounce final sentence and to award execution, this court must follow the precise terms of the conviction in the district court. I am not of that opinion. The language of the third section of the act of March 3, 1879, relating to this subject, is as follows: "And in case of an affirmance of the judgment of the district court, the circuit court shall proceed to pronounce final sentence and to award execution thereon." If this court must adopt the terms of the conviction of the district court, it is where the judgment of that court is affirmed, not only as to the rulings made during the trial of the cause, but also as to the sentence. The first section of the statute describes the cases in which a writ of error will lie—where the *sentence* is a fine of $300 or imprisonment. *In such case* the party aggrieved by *a* decision of the district court may tender his bill of exceptions. I think one object of the statute was to give to the circuit court authority, not only over the rulings of the district court during the trial, but also over the degree of punishment imposed upon the party, if, upon the whole record before the circuit court, it should appear in the judgment of the court that the penalty was not in conformity with law; as where a fine was imposed when the statute authorized imprisonment only, or imprisonment where it authorized a fine only, or otherwise was unlawful, or where it was too lenient or too severe. In all these cases I think the opinion of the district court is subject to review by the circuit court, and may be changed. It is not necessary to decide whether the circuit court might alter the degree of punishment upon facts which might be established in the circuit court, but did not appear in the record. It is sufficient in this case that, upon the facts apparent upon the record as to the degree of punishment imposed, the opinion of this court differs from that of the district court; and this court will proceed, therefore, to pronounce final sentence, and to award execution in conformity with its own opinion as to the degree of punishment which should be imposed upon the party convicted.

### NOTE.

Several interesting and important points are made in the foregoing decision. These may be grouped as follows:

1. DECOY SOLICITATION. It is held to be no defence to an indictment under the statute for sending an obscene book by mail that the book was mailed actually to a detective who wrote for it soliciting it under a fictitious name, to which name it was addressed. A similar point was decided in the same way by *Benedict*, J., in *U. S.* v. *Bott*, 11 Blatchf. 346; that learned judge holding it was no defence to an indictment for sending a powder designed to procure an abortion that the act was elicited by a decoy letter. It is true that we have a ruling from Judge Dillon (*U. S.* v. *Whittier*, 5 Dill. 35) that a sealed letter addressed to a decoy, and therefore not "giving information" in the sense of the statute, was not within the prohibition of the statute. But even supposing that Judge Dillon was right in this conclusion, (as to which I may be permitted with all respect to that excellent jurist to express my doubts,) the case is distinguishable from that now before us, which is that of sending an obscene book accompanied with drugs. The sending an obscene book, like that of sending a noxious drug, is made indictable by the statute without the qualification that it should give information, which is the condition applied to that section of the act under which the prosecution before Judge Dillon took place. The statute makes it indictable to send by mail any "obscene, lewd, or lascivious book, pamphlet, picture, paper, print, or other publication of an indecent character." Now, if the indictment were for the publication of an obscene libel at common law, no one would pretend that it would be a defence that the libel put in evidence on the trial had been sought for the express purpose of being put in evidence. That a sale to a party requesting the sale for this very purpose is an adequate publication has been repeatedly ruled. *Rex* v. *Burdett*, 4 B. & Al. 95; *Rex* v. *Wegener*, 2 Stark. N. P. 245; *Brunswick* v. *Harmer*, 14 Q. B. 185; *Com.* v. *Blanding*, 3 Pick. 304; *State* v. *Avery*, 7 Conn. 268; *Hazleton Coal Co.* v. *Megargel*, 4 Barr, 324; *Swindle* v. *State*, 2 Yerg. 581. These rulings are in entire accordance with others in reference to other phases of crime. If I suspect, for instance, an employe of stealing money, I may mark money and have it exposed in such a way as to attract his attention; and if he steal it and be subsequently presented for larceny, he cannot defend on the ground that a trap was laid for him. *Reg* v. *Williams*, 1 C. & K. 195; *Rex* v. *Headge*, 2 Leach, 1033; R. & R. 160; *Reg* v. *Egginton*, 2 B. & P. 509; 2 Leach, 915; *Rex* v. *Lawrence*, 4 Cox, C. C. 438; *Reg* v. *Johnson*, C. & M. 218; *Reg* v. *Bannen*, 1 C. & K. 295; *U. S.* v. *Foye*, 1 Curt. 364; *Pigg* v. *State*, 43 Tex. 108. See *Alexander* v. *State*, 12 Tex. 540.

It is true that if I should put the piece of money in the possession of the defendant as an absolute gift, this would be a defence, for he could scarcely be held to *take* that which is given to him without any qualification; but if I give it to him with a qualification, making him a mere bailee, (as where I give it to him as a messenger,) or if I leave it about my premises so as to

v. 10, no. 1—7

attract his attention, without surrendering my possession of it, then the "trap" is no defence. The same distinction is applicable to the opening of a door so as to let in a burglar. The burglar, it is true, cannot be charged with "breaking" a door which is opened for him to get in. It is otherwise, however, as to invitations held out as decoys by one of the inmates of the house, or as to masks in the way of apparent defencelessness, or as to the leaving open of outer doors, provided this does not leave the main entrance open. *Rex* v. *Johnson*, C. & M. 218; *Allen* v. *State*, 40 Ala. 334. Such, also, is the rule with regard to counterfeit money. A policeman, by pretending to be an accomplice, may obtain access to a chamber where counterfeiting instruments are collected; but this does not prevent a conviction being rendered on his testimony. Wills, Circum. Ev. 117, 118. The guilty party may be induced by a trap to offer the counterfeit coin, but this does not make the offering the counterfeit coin any the less indictable. *Rex* v. *Holden*, R. R. 154; 2 Taunt. 334. Now, does the fact that a detective attends unlawful meetings for the purpose of afterwards disclosing their secrets and becoming a witness against the wrong-doers make him an accomplice. *Rex* v. *Bernard*, 1 F. & F. 240; *Rex* v. *Mullins*, 3 Cox, C. C. 526; *Com.* v. *Downing*, 4 Gray, 29; *Com.* v. *Wood*, 11 Gray, 86; *Com.* v. *Cohen*, 127 Mass. 282; *Campbell* v. *Com.* 84 Pa. St. 187; *State* v. *McKean*, 36 Iowa, 343; *People* v. *Farrell*, 30 Cal. 316; *People* v. *Barric*, 49 Cal. 342; *Williams* v. *State*, 55 Ga. 391; *Wright* v. *State*, 7 Tex. Ap. 574.

One of the most nefarious and infamous conspiracies ever known in this country—that of the "Molly Maguires," in 1876, to coerce by assassination the coal proprietors of the Pennsylvania anthracite region—was exploded, and the chief perpetrators brought to justice by the sagacity and courage of a detective who attended the meetings of the conspirators and thus became possessed not only of their plans for the future but of their exploits in the past. The fact is, there is no crime that is not committed under the influences of some sort of decoy; and to acquit in all cases where the offender is incited to the crime by some instigation of this kind would leave few cases in which there could be a conviction. If the decoy is not intentional it may act by the way of negligence; and if an intentional decoy is a ground for defence so should be a negligent decoy. But it is now well settled that contributory negligence, unless breaking the causal relation between the offender and the offence, is no defence. *Rex* v. *Kew*, 12 Cox, C. C. 355; *Rex* v. *Forbes*, 7 C. & P. 224; *Reg* v. *Parish*, 8 C. & P. 94; *Rex* v. *Beard*, Id. 143.

The only exceptions known to the principle before us exist (1) in cases in which to the offence it is essential that it should be "against the will" of the party injured; and (2) in cases in which the offence consists in certain physical conditions which cannot exist if a trap be laid.

(1) When it is a condition to an offence that it should be "against the will" of the party injured, then there must be an acquittal should it appear that such party invited the defendant to the commission of the offence. This is the case with regard to prosecutions for rape: *Reg* v. *Fletcher*, Bell, 63; 8 Cox, C. C. 131; *Com.* v. *McDonald*, 110 Mass. 405; *Brown* v. *People*, 36 Mich. 203; *State* v. *Burgdor*, 53 Mo. 65; *Walter* v. *State*, 40 Ala. 325; to prosecutions for highway robbery: *Rex* v. *McDaniel*, Fost. 121, 128; *Long* v. *State*, 12 Ga.

293; to prosecutions for assaults, which are not in themselves offences against the public peace: *Rex* v. *Wollaston*, 12 Cox, C. C. 180.

(2) When there are physical conditions of an offence inconsistent with a trap, so that these conditions cannot exist when there is a trap, then the defendant must be acquitted. The most striking illustration of this exception is to be found in the case of burglary already noticed. There can be no prosecution for burglary in cases where the door of the house was opened by its owner to give the burglar entrance.

Whether, when the offence is the special product of the trap, the defendant can be convicted, depends upon the exclusiveness of the causal relationship between the offence and the trap. When the defendant was the passive tool of the entrapping party then there should be an acquittal. On the other hand, the defendant ought not to escape conviction in any case (with the exceptions above given) in which he knowingly committed the offence. The most freqent cases under this head are prosecutions for illicit sales of liquor. In an English trial in 1881 (*Rex* v. *Titley*, see London Law Times, July 30, 1881) a conviction of this class, when the sale was induced by the adroitness of a detective, was sustained, though it became subsequently the subject of much discussion in the house of commons. In Scotland (*Blaikie* v. *Linton*, 18 Scottish L. R. 583) a similar conviction in 1881 was set aside by the court of justiciary on the ground that the offence was the product of the solicitation. But this can only hold good in cases in which the offender's action is not imputable to his free agency.

2. INEFFECTIVENESS OF INSTRUMENT. The ruling of Judge Drummond, that the fact that the pills sent "would not of themselves prevent conception" is no defence, is put on the ground that "the language of the statute is not that the article must necessarily procure abortion or prevent conception, but that it is designed or intended to procure the one or prevent the other;" and he adds "that these pills were sent in answer to a letter asking for something that might have that effect, and they were sent with the statement that they were just what the writer wanted." It may, therefore, be well argued in this particular case that the defendant was estopped from maintaining that the pills were innocuous. But aside from the statute, and the peculiar shape the case took in consequence of the assertions of the defendant, there is little doubt that the decision of Judge Drummond may be supported on principle. The question, indeed, is one which will always continue to agitate not only jurists but casuists. An offence is attempted with unsuitable instruments. Is this indictable? In Germany, after a controversy in which the ablest jurists have taken part, and after numerous treatises have been written on both sides, the high court of appeals (Reichsgericht) has decided that an attempt to commit an offence with unsuitable means is indictable notwithstanding such unsuitability; in other words, *alle untaugliche Versuchshandlungen sind strafbar*. Entscheidungen des Reichsgerichts, bd. 1, p. 439. It is true that this has by no means silenced the dispute which has for so long existed on this interesting topic; and in the first number of the *Zeitschrift für die gesammte Strafrechtswissenschaft* (1881) we have an elaborate and powerful article by Dr. Geyer, an eminent writer on criminal law, controverting the decision of the court. But so far as the ruling goes to

the point that unsuitability of means is not by itself a defence to an indictment for an attempt, it is sustained by numerous adjudications of our courts. *Reg* v. *St. George*, 9 C. & P. 483; *Rex* v. *Lallement*, 6 Cox, C. C. 204; *Reg* v. *Cludway*, 1 Den, C. C. 515; 2 C. & K. 907; *Com.* v. *McDonald*, 5 Cush. 365; *O'Leary* v. *People*, 4 Parker, C. R. 187; *Slatterly* v. *People*, 58 N. Y. 354, and other cases cited; Whart. Crim. Law, (8th Ed.) § 182. See, particularly, *Kunkle* v. *State*, 32 Ind. 220; *Johnson* v. *State*, 26 Ga. 611; *Mullen* v. *State*, 45 Ala. 43; *State* v. *Napper*, 6 Nev. 451; *State* v. *Utley*, 82 N. C. 556; *State* v. *Milsaps*, Id. 549. And this is right. If we should hold that there can be no conviction for attempts with unsuitable instruments there could be few convictions for attempts, since there are few attempts of which we could say that the instruments to be used were absolutely suitable. But to this there are two exceptions: (1) Where a statute says that an offence with a particular instrument is to have an especial punishment, then under this statute, to sustain a conviction, it must be shown that the instrument designated was used. (2) The instrument, at common law, must be one apparently calculated to produce the attempted criminal result. If the offender takes aim with a sunflower, or with a violin, he cannot be charged with attempting to shoot with a gun. But if he takes aim with a gun whose powder is wet, while the instrument is as innocuous as would be the sunflower or the violin, he is, nevertheless, chargeable with the attempt to shoot with the gun. See *Blake* v. *Barnard*, 9 C. & P. 626; *Reg* v. *James*, 1 C. & K. 530; *Tarver* v. *State*, 43 Ala. 354; *Robinson* v. *State*, 32 Tex. 65. It is true that if the party threatened knows that the gun is not loaded, or is loaded in such a way as to be absolutely ineffective, then the offence cannot be considered as an attempt, or as an assault with intent to kill. *Crumbley* v. *State*, 61 Ga. 582. But if the instrument is apparently calculated to do harm, and is used in such a way as to make it effective if it is what it seems, then, in the anxiety created, and in the provocation to retaliation it involves, the constituents of an indictable offence are made out.