**Charles Wells NEILL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15119.**

United States Court of Appeals
Eighth Circuit.
Aug. 22, 1955.

Warren C. Schrempp, Omaha, Neb. (David S. Lathrop, Omaha, Neb., on the brief), for appellant.

Harry W. Shackelford, Asst. U. S. Atty., Omaha, Neb. (Donald R. Ross, U. S. Atty., Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Charles Wells Neill, a physician and surgeon engaged in the general practice of medicine at South Sioux City, Nebraska, was indicted by a grand jury in an 11-count indictment, each count charging a violation of the Anti-Narcotic Act, 26 U.S.C. § 2554(a, c). Upon a plea of not guilty, he was tried to a jury and found guilty on all counts. A motion for a new

11. United Mine Workers of America v. Patton, 4 Cir., 1954, 211 F.2d 742; N. L.R.B. v. Acme Mattress Co., 7 Cir., 1951, 192 F.2d 524.

trial was denied and defendant was sentenced. Thereafter appeal was taken to this court.

The primary issue is whether hearsay or other objectionable testimony may be introduced by the government prosecutors in order to show the reasonableness of their investigation of the defendant and justify a subsequent entrapment where the defendant has not invoked the defense of entrapment or questioned the investigation.

In the presentation of its case in chief, the government first introduced the testimony of two informers, one Alton Jones and one Joe Hudson. Jones' testimony concerned the first three counts in the indictment. Jones, an admitted narcotic addict, testified that he was sent to the defendant's office by Government Narcotics Agents and that on three separate occasions he was able to purchase a prescription for narcotics from the defendant, without genuine examination and with a simulated disease or condition. The prescriptions were subsequently filled by a local drug store. Hudson, also a narcotics addict, first testified to a narcotics transaction with the defendant in 1935. Objection was made that the transaction was too remote, but the evidence was received on the issue of intent and good faith. He testified that the defendant had given him a prescription for narcotics without examining him and at that time there was nothing wrong with him. He testified to similar transactions in 1936, 1939, 1940 and 1945.

At the times covered in Counts 4 to 11, inclusive, Hudson testified he was sent to the defendant's office by a Narcotics Agent for the purpose of attempting to obtain, unlawfully, prescriptions for narcotics and that in each instance he was successful in so doing.

Subsequent to the testimony of the two informers, there were introduced and received into evidence some 332 prescriptions for narcotics issued by the defendant to five patients—Verna Dahms, Elizabeth Swartz, Howard Engle, M. Merrime and Gertrude Hendrick. Other than the mere recitation of the disease or condition from which such patients were presumably suffering and the Agent's statement that three of the persons to whom they were issued were narcotics addicts, there was no attempt made by the government in its case in chief to justify the introduction of the 332 prescriptions as being wrongfully or unlawfully issued. There was an unsuccessful attempt made to show the "usual and ordinary number of prescriptions" issued by a doctor "in a community of 7,500 people" during a period similar to the period covered by the investigation here. Objection was sustained on the ground that South Sioux City, where the defendant practiced medicine, was not a single isolated municipality but was suburban to the much larger city of Sioux City, Iowa. A subsequent attempt to show the usual number of prescriptions that a doctor in active practice in a community as large as Sioux City and South Sioux City combined would ordinarily write per month or per year was objected to and the objection sustained. No further effort was made upon the part of the government to justify the introduction of the 332 prescriptions.

In connection with the introduction of such prescriptions issued by the defendant, defendant's counsel, as part of his objection, made it clear that at least at that point the defendant was not relying upon the defense of entrapment.

"And for the further reason that said exhibits are not indicative in any manner whatsoever of any violation of either state or federal laws and do not tend to prove or disprove any issue with respect to the reasonableness of such investigation therefor; *and that, with respect to the offer of the exhibits to prove the reasonableness of the investigation, the same is not an issue contained in this case or raised by the defendant at this time.*" (Emphasis supplied.)

Subsequent to the introduction of the first group of such exhibits, the Court, in overruling defendant's objection thereto, cautioned the jury regarding the limited purpose for which the Court received the

exhibits, the Court's statement being as follows:

"The objection is overruled. The exhibits numbered consecutively from 17 to 52, both inclusive, are received, but only for the limited purpose of the offer.

"And you, ladies and gentlemen of the jury, are now especially cautioned with regard to exhibits 17 to 52, both inclusive, you are not to consider them as any, even the slightest, evidence of the making by the defendant of any sale or sales charged against him in the indictment, but will consider them only to the extent, if at all, that you consider that they may be instructive upon either of these two points:

"First, the good faith and intent of the defendant in the making of any sales charged within the indictment which you may find he actually made but which you may find from the evidence which has been or shall be admitted without limitation or restriction as to its probative significance;

"And secondly, to the extent that you may consider the exhibits numbered 17 to 52, both inclusive, are instructive upon the existence of probable cause on the part of the witness Winberg and those under his direction for the making of attempts through the use of narcotics addicts to make purchases of narcotics through the device of procuring the issuance of prescriptions from the defendant."

Similar admonitions were given as the other prescriptions were offered and received in evidence.

Joseph F. S. Winberg, a Narcotics Bureau Agent, testified that he had charge of the investigation and directed its activities. In an attempt to justify his investigation of the defendant and show the reasonableness thereof and the grounds for using informers or decoys, he testified concerning conversations he had with persons whom he believed to be addicts who told him they had obtained narcotic prescriptions from the defendant and that other persons had told them that they had received narcotic prescriptions from the defendant. Over strenuous objection, he was allowed to testify as follows:

"Q. And what was the nature of the reports that you received?

"Mr. Schrempp: That is objected to as hearsay and the witness' assumption, and depriving us of the right of cross-examination.

"The Court: The objection is overruled.

"A. The nature of the reports that I received was that these people themselves had obtained narcotic drugs from the defendant and that they knew of other people who were addicted or had obtained narcotics drugs from the defendant.

"Q. Well, was it reported to you that they had obtained narcotics more than once from this defendant? A. Yes.

"Mr. Schrempp: The same objection, as hearsay.

"The Court: The objection is overruled.

"Q. Did the reports that you received state whether or not the narcotics were obtained by prescriptions or otherwise? A. By prescription."

On cross examination the witness stated that he did not know the whereabouts of the informants Garner York, Evelyn Jones, Fred Watson and one Winters. He then testified as follows:

"Q. After you have been supplied with information by these people, as you say, did you make any attempt to keep in contact with them so you would be able to locate them from time to time? A. The information they supplied I considered more or less as confidential and at that time they requested of me not to reveal that they had given the information and that they in no way wanted to become involved in the

matter, and so I just accepted the information for whatever it was worth. I have tried to locate them since then —since these times—but have been unsuccessful.

"Q. In your conversation with them did you ask them if they would appear in court and state under oath in a trial the things that they told you? A. Yes, I did.

"Q. And did they agree to? A. They said they didn't want to."

In connection with the introduction of the objected-to testimony of Agent Winberg, the Court limited the consideration by the jury of such testimony in the following manner:

"The Court: Now, ladies and gentlemen of the jury, the testimony of this witness, apart from the showing of his official position, antecedent educational qualifications and general duties, has thus far related principally to his receipt in his official capacity of certain information which I shall not repeat at this time especially since we have just heard it.

"Evidence of that character is not receivable and that evidence may not be considered by you in proof of any charge of a specific sale, which is made in the indictment against the defendant.

"However, in the trial of this case it has already developed that as a part of the investigation which the present witness participated in employment was made of two men who appeared as witnesses before you who were addicted to the narcotic drug habit.

"The evidence which the witness has thus far given touching the information which came to him of the possible violation of the law by the defendant may be considered by you only insofar as, if at all, it may tend to show that the present witness in his official capacity had reason to make an investigation of the practices of the defendant and to take such reasonable steps in that investigation as would be calculated to make the investigation effective and informative.

"The evidence touching the information that has come to this witness, let me repeat, must not by you be used as evidence of any of the specific transactions charged against the defendant in the indictment."

A similar admonition was given in the Court's general instructions following the close of all evidence.

■ It is apparent that what the government did was anticipate that the defendant would attempt to set up the defense of entrapment. Entrapment is the solicitation of an otherwise innocent person to commit a crime solely for the purpose of prosecution. It arises where the criminal purpose or design originated in the minds of government officials and such criminal purpose or design is implanted in the mind of an otherwise innocent person, the object being his prosecution. Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. It may be a good defense and in cases such as the instant one, the defense of unlawful entrapment may be interposed by a defendant.

As stated, the difficulty in the instant case is that the government was allowed to anticipate that the defendant would use entrapment as a defense. Without waiting for the defendant to interpose the defense of entrapment and in the face of his protest that entrapment was not an issue in the case, the government attempted to establish that its agents had reasonable grounds for believing that the defendant had been guilty of violating the law in other instances and were therefore justified in using the decoys or informers to give the defendant the opportunity of committing the crimes charged in the indictment.

As an explanation or justification of the introduction of Agent Winberg's hearsay testimony and the 332 prescriptions for narcotics issued by the defendant, without establishing that the lat-

ter were issued wrongfully or unlawfully or that they were in considerable excess of those issued by a physician practicing under similar circumstances, the government states in its brief as follows:

"The defendant was not an ordinary street dope peddler, but, on the contrary, was an elderly small-town physician, duly licensed, who, so far as the jury knew, had always borne a high reputation for professional integrity. The eleven offenses with which he was charged were of a character which laymen regard as peculiarly reprehensible. Proof that the Government, through its Narcotic Agent, had employed two ex-convicts to go to the defendant's office and attempt to obtain from him prescriptions for narcotic drugs clearly called for explanation to repel an otherwise natural and justifiable inference of entrapment."

█ We do not agree. If the defendant does not interpose entrapment as a defense, no reply is called for or proper. If the defendant himself, however, sets up entrapment as a defense, the situation changes and the government, in reply to that defense, is then, and only then, justified in producing evidence to support its contention that the criminal design or purpose already existed in the defendant's mind at the time the informers were sent to him and he was given an opportunity of violating the law. See Ryles v. United States, 10 Cir., 1950, 183 F.2d 944, 945:

"When the defense of entrapment is interposed, the predisposition and criminal design of the defendant becomes relevant and the government may introduce evidence relating to the conduct and the predisposition of the defendant as it bears upon the issue of entrapment. The record and the reputation of the defendant become important upon this issue in rebuttal."

The same thought seems to be indicated by the Supreme Court in Sorrells v. United States, supra, where the Court, speaking through Mr. Chief Justice Hughes, stated, 287 U.S. at page 441, 53 S.Ct. at page 212:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. Grimm v. United States, 156 U.S. 604, 610, 15 S.Ct. 470, 39 L.Ed. 550; Goode v. United States, 159 U.S. 663, 669, 16 S.Ct. 136, 40 L.Ed. 297; Rosen v. United States, 161 U.S. 29, 42, 16 S.Ct. 434, 480, 40 L.Ed. 606; Andrews v. United States, 162 U.S. 420, 423, 16 S.Ct. 798, 40 L.Ed. 1023; Price v. United States, 165 U.S. 311, 315, 17 S.Ct. 366, 41 L.Ed. 727; Bates v. United States, C.C., 10 F. 92, 94, note, p. 97; United States v. Reisenweber, 2 Cir., 288 F. 520, 526; Aultman v. United States, 5 Cir., 289 F. 251. The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."

At page 451 of 287 U.S., at page 216 of 53 S.Ct.:

"Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience must yield to the essential demands of justice. The argument is pressed that if the defense is available it will lead to the introduction of issues of a collateral character relating to the activities of the officials of the government and

to the conduct and purposes of the defendant previous to the alleged offense. For the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. Grimm v. United States, supra. The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the Government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and *if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense.*" (Emphasis supplied.)

Here it seems apparent that the Supreme Court recognized that the introduction of "issues of a collateral character relating to the activities of the officials of the government and to the conduct and purposes of the defendant previous to the alleged offense" is a detriment to the defendant but that "if the defendant seeks acquittal by reason of entrapment he cannot complain * *." "If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense". Certainly it follows logically that if a defendant does not seek to use the defense of entrapment, he should not be prejudiced by the government's introduction

of collateral issues, the activities of the officials of the government and the previous conduct and purposes of the defendant. It is apparent that the only possible result of the introduction of testimony in reply to a defense not interposed would be prejudice to the defendant.

The Court of Appeals, Fifth Circuit, in Reece v. United States, 1942, 131 F.2d 186, 188, had before it a somewhat similar problem. There, however, the court found the objected-to testimony admissible because the defendant indicated he was going to raise the defense of entrapment.

"*The cross-examination* of the disguised officer was such as to indicate that a contention of 'entrapment', so called, was to be raised and *justified on redirect examination* his testimony that he had disguised himself and undertaken to buy liquor in that vicinity by orders of his superiors in the Internal Revenue Department on information that numerous violations of the Revenue Laws were in progress there." (Emphasis supplied.)

In the instant case, we have ordered and examined the original transcript of testimony and find no indication therein that the defendant expected to use entrapment as a defense. In fact, as indicated supra, counsel for the defendant stated:

" * * * with respect to the offer of the exhibits to prove the reasonableness of the investigation, the same is not an issue contained in this case or raised by the defendant at this time."

In support of its contention that hearsay testimony and the conclusions of Agent Winberg were justified, the government cites in its brief the case of United States v. Siegal, D.C., 16 F.2d 134, 137. The opinion in that case was written by Judge John B. Sanborn, now a member of this court, then a District Judge. The government quotes the following portion from that opinion:

"It is commonly known that, in the illicit drug trade, the retail dealers' business is selling to addicts, that the business is carried on with the utmost secrecy, and that the sales are made only to those who are known to be victims of the drug habit. If hearsay testimony is not a sufficient basis for a reasonable belief on the part of the officers charged with the enforcement of the Narcotic Act, it will be seldom, if ever, that they can use a decoy, without such use constituting an unlawful entrapment."

A portion of Judge Sanborn's opinion which the government did not quote and which seems particularly pertinent herein will be found, 16 F.2d at page 136 as follows:

"The true rule would seem to be this: That the government, prior to the question of entrapment having been raised, could not introduce any evidence of complaints having been made to the officers, but that, when the issue of entrapment was raised, then it could show what grounds of suspicion they had."

We think that was a correct statement of the rule and that it is applicable herein.

■ As we have already stated, an examination of the original transcript of testimony herein not only fails to indicate that the defendant interposed or intended to interpose entrapment as a defense, but shows that he conclusively stated his position that the reasonableness of the government's investigation was not in issue. In spite of that, the government was allowed to submit two particularly prejudicial portions of evidence: One, the hearsay testimony of Agent Winberg, and the other the 332 prescriptions admitted without establishing that they were unlawfully issued or considerably in excess of the average number which would usually be issued. This compels the conclusion that the defendant did not have a fair trial. The case is reversed and remanded for a new trial.