**UNITED STATES of America,**
**Appellee,**

v.

**Oliver W. ARNOLD, Appellant.**

**No. 10114.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1965.

Decided March 25, 1966.

Harvey S. Lutins, Roanoke, Va. (Honeyman & Lutins, Roanoke, Va., on the brief), for appellant.

Thomas B. Mason, U. S. Atty., for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and MARTIN, District Judge.

BOREMAN, Circuit Judge.

The appellant, Oliver W. Arnold, was tried by the District Court without a jury and convicted of violating section 7262 of the Internal Revenue Code of 1954. That section makes it a misdemeanor for a person to do "any act which makes him liable for special tax under subchapter B of chapter 35 without having paid such tax." The special tax for which Arnold was held to be liable and to have failed to pay was the occupational tax of $50 per year imposed by section 4411 of the Internal Revenue Code of 1954 upon any person engaged in the business of accepting wagers or engaged in receiving wagers on behalf of such a person. Following Arnold's conviction, he was sentenced to pay a fine of $1,000.

Arnold contends vigorously that the evidence presented by the Government was not sufficient to support the guilty verdict. Both in his brief and oral argument, he had concentrated his attack upon the sufficiency of the evidence pertinent to accepting or receiving wagers. That evidence is briefly summarized as follows:

Mr. Lonnie Dale, who operated a printing business, testified that during the football seasons of 1963 and 1964 Arnold engaged him to print large quantities of "football cards." These cards listed teams opposing each other on a certain date, gave point spreads and made provision for the identification of those teams selected to "win" by the holder of the card. Mr. Dale further stated that Arnold ordered the cards in the name of "James Smith"; that he did not know that defendant's name was Arnold until his (Dale's) wife overheard a telephone conversation in which defendant stated

that his name was Oliver Arnold; that Arnold picked up and paid for the cards at Dale's place of business when they had been printed; that on one occasion Arnold commented to him that he had had a terrible week the previous week; and that on another occasion Arnold told him that he had just had one of his very best weeks.

Robert J. Fleming testified that on October 24, 1964, he saw Arnold and another man sitting at the counter of a public grill with a small pile of money between them, that Arnold said to the other man, "There is no new money in here" and "Wait until we get the stuff from the Hotel Roanoke. There will be plenty of new money in here." Fleming further testified that he saw Arnold again on October 26, 1964, at which time Arnold told him that the "bookies had told him to take all the Detroit money that they could get"; that, "We had two people to pick twelve winners"; and, showing him some cards, "This is a C card. This guy won $900 * * * This one is worth $1200." Fleming stated that the card shown to him by Arnold on that occasion had ink circles drawn around certain teams listed on the card.

If the only element requiring proof was accepting or receiving wagers, we would have no feeling of hesitation in affirming Arnold's conviction for the evidence was sufficient from which the trial court could reasonably conclude that the defendant had been engaged in the business of accepting wagers or had been receiving wagers for someone engaged in such business.[1] However, it is evident from a reading of section 7262 that a violation of that section occurs only where the person accepting or receiving wagers does so *without having paid the $50 occupational tax.* The presentation of proof of this second essential element poses a question which requires additional consideration and comment.

The Government rested after offering the evidence as summarized above. No evidence had then been offered to show that Arnold had failed to pay the tax. Arnold's counsel made a motion for judgment of acquittal, which motion was immediately overruled. The defendant declined to put on any evidence and rested his case also. The court then heard closing argument by Arnold's counsel, who devoted his remarks almost totally to the claimed insufficiency of the evidence to establish the first element of the charged offense, Arnold's acceptance or receipt of wagers. The court's attention was not directed to the failure of proof of nonpayment of the required tax.

Following argument by Arnold's counsel, the court stated that it did not care to hear any argument from the United States Attorney since it believed Arnold to be guilty of the offense charged. The court then proceeded to state orally its findings that Arnold was engaged in the business of accepting wagers but made no finding that Arnold had not paid the $50 tax. Arnold's counsel then indicated in response to an inquiry from the court that he had nothing to say with reference to the question of punishment. Whereupon the court apparently started to impose sentence, saying, "All right, please stand." At this point the following discussion took place:

"MR. MASON [United States Attorney]: Your Honor, before the pronouncement of sentence, could I just interrupt and get into the record the certification of the district records of the Internal Revenue Service as to nonpayment of tax. There was no issue made of this during the trial.

"MR. LUTINS [Defense counsel]: I'm going to object, Judge. He has already rested, and the Court has ruled.

"THE COURT: Oh, well, it was an oversight, Mr. Lutins.

"MR. MASON: Yes, sir.

"THE COURT: I will let him put it in as Government's Exhibit Number—

---

1. The District Court concluded from the evidence that Arnold was the principal in a business of accepting wagers.

"MR. LUTINS: Well I object.

"MR. MASON: Five.

"THE COURT:—Number 5—I think it was purely an oversight."

Immediately following the introduction of this evidence of nonpayment of the tax, the court pronounced sentence.

Arnold now attacks this incident in the trial and contends that it was error to permit introduction of evidence of nonpayment of the tax after the verdict had been announced. However, we find no merit in this contention. In Haugen v. United States, 153 F.2d 850 (9 Cir. 1946), a nonjury case involving a prosecution for forgery and uttering, the trial court, after both sides had rested, filed an opinion stating that the prosecution had failed to present certain evidence which was necessary to a conviction and therefore the indictment would have to be dismissed. However, no action had been taken to dismiss when, five days later, the prosecution moved the court to reopen the case and permit the introduction of the evidence which the court had found necessary to sustain a conviction. The court granted the motion, heard the evidence and convicted the defendant. The conviction was affirmed on appeal.[2]

We think a more difficult question is presented in the instant case as to whether the evidence admitted after the verdict can be said to cure the clear insufficiency of the evidence to support a conviction at the time the verdict was orally announced. This was not the problem in the Haugen case for there the trial court correctly ruled that the evidence which had been adduced when both sides rested was not sufficient to support a conviction.

■ We have been unable to find any case directly in point. Under the circumstances here present, we conclude that the court's technical error which obviously resulted from the inadvertence, carelessness and ineptness of government counsel does not command a reversal. The District Director's certification of a lack of any record of payment of the occupational tax by Arnold was offered almost immediately after the court's oral announcement of its verdict and recitation of its findings in support thereof. This certification was by its nature virtually irrefutable evidence that the tax had not been paid. Unquestionably, Arnold's plea of not guilty necessarily put the Government upon proof of every fact material to the offense with which he was charged, but we find no abuse of the court's discretion in permitting the Government to supply the proffered evidence necessary to sustain a conviction. Neither do we think that the defendant was prejudiced in any way by this procedure. After this evidence was offered and admitted the defendant could have requested an opportunity to present evidence rebutting the certification of nonpayment of the tax but he did not do so. Furthermore, the defendant could have invoked the provision of Rule 23(c) of the Federal Rules of Criminal Procedure which requires the District Court to find the facts specially if requested to do so. Implicit in the court's pronouncement of sentence and the entry of formal judgment of conviction is a reaffirmance of the general finding of defendant's guilt as clearly as if the judge had uttered the words, "I again find the defendant guilty as charged."

We base this decision on the procedural facts and circumstances revealed by this record. Lest we be misunderstood we should make it perfectly clear that we are not affirming a conviction where evidence offered and introduced subsequent to a verdict of guilty must be relied upon to support it. This was not a jury verdict which had been rendered before essential supporting evidence had been adduced. To set aside this conviction would

2. The Court of Appeals avoided the defendant's double jeopardy claim by holding that the trial court's finding of insufficient evidence to support a conviction was not equivalent to a verdict of not guilty.

be to display an undue reverence for and blind insistence upon technical perfection in federal criminal prosecutions where no prejudice is apparent.[3]

Affirmed.

---

3. See Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051 (1933), wherein the evidence disclosed custody and control of a still for unlawful distillation of alcoholic spirits but there was no proof of lack of registration or failure to give bond. The Court cited several decisions of the lower federal courts which had accepted the doctrine that the custody and control of such a still give rise to an inference of lack of registration and failure to give bond which the defendant must overcome by proof.

  "The general principle, and we think the correct one, underlying the foregoing decisions, is that it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control." (289 U.S. at 91–92, 53 S.Ct. at 533.)

See also Reynolds v. United States, 289 F.2d 698, 699 (10 Cir. 1961).