Calvin ROGERS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18279.

United States Court of Appeals
Eighth Circuit.

Nov. 8, 1966.

Rehearing Denied Dec. 19, 1966.

Lay, Circuit Judge, dissented.

Warren C. Schrempp, of Schrempp, Lathrop, Rosenthal & Bruckner, Omaha, Neb., for appellant. Richard J. Bruckner, Omaha, Neb., was with him on the brief.

Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., for appellee. F. Russell Millin, U. S. Atty., and John W. Carter, Asst. U. S. Atty., Kansas City, Mo., were with him on the brief.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and LAY, Circuit Judges.

VOGEL, Chief Judge.

Calvin Rogers, the appellant herein, was convicted by a jury on all four counts of an indictment charging unlawful sale or possession of wild ducks and wild geese in violation of 16 U.S.C.A. § 703 and § 704, and §§ 10.4 and 10.53, Title 50, Code of Federal Regulations. Upon conviction, the appellant was sentenced to imprisonment for a period of 90 days on each of the four counts, the sentences to be served concurrently. In addition, appellant was assessed a fine of $500 on Count 1. Following a denial of his motion for judgment notwithstanding the verdict or in the alternative for a new trial, Rogers appealed to this court. We affirm.

Specifically, Count 1 charged that on January 23, 1964, the appellant unlawfully sold four wild ducks. Count 2 charged that on November 23, 1964, the appellant unlawfully sold one wild duck and two wild geese. Count 3 charged that on January 12, 1965, the appellant unlawfully sold 39 wild ducks and 20 wild geese. Count 4 charged that on January 12, 1965, the appellant did knowingly, willfully and unlawfully have in his possession more than the prescribed limit of wild ducks and wild geese, to-wit, 31 wild ducks and 15 wild geese.

Following testimony establishing the sale of the wild ducks and wild geese referred to in Counts 1, 2 and 3 and the possession of the wild ducks and wild geese referred to in Count 4, the appellant took the witness stand and testified in his own behalf. He admitted the sale of the ducks and geese in question and the possession of a "substantial number of wild game" but as a defense claimed unlawful entrapment in that he contended that he was induced to accumulate and to sell the wild game by Luther E. Miller, a criminal investigator employed by the Department of the Interior, Bureau of Sports Fisheries and Wildlife. Appellant claims a number of errors and asks that the conviction be reversed.

Appellant's first contention is that there was a failure of proof in that the government offered no testimony or evidence of any nature that he did not have a permit to sell wild ducks and geese under the authority of the Migratory Bird Treaty and that it likewise did not establish that the defendant did not have authority to have in his possession more than the prescribed limit of wild

ducks and wild geese. Appellant's contention is not tenable. After establishing the sales and the possession, it was not necessary for the government to prove that Rogers was without authority to make the sales or without authority to have possession of more than the prescribed limits of birds. A prima facie case had been established and no further proof was necessary to sustain a conviction. The sales were established by the government and admitted by the appellant. It was not necessary for the government to prove a negative. The Supreme Court, when faced with a similar evidentiary problem in a criminal prosecution, recognized that:

"The general principle, and we think the correct one, * * * is that it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control. (Cases cited.)" Rossi v. United States, 1933, 289 U.S. 89, 91–92, 53 S.Ct. 532, 533, 77 L.Ed. 1051, 1052.

This fundamental principle has been continually followed. Holland v. United States, 1954, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Fleischman, 1950, 339 U.S. 349, 360–361, 70 S.Ct. 739, 94 L.Ed. 906; United States v. Arnold, 4 Cir., 1966, 358 F.2d 633, 636. The burden is solely upon appellant to prove the affirmative.

■ Appellant's claimed errors Nos. 2 and 3 appear to be an attack on the trial court's instructions to the jury, with particular reference to the court's definition of the crimes and of the specific intent required for their perpetration. A careful reading of the court's entire charge herein forces us to the conclusion that appellant had no just grounds for complaint. Judge Duncan instructed the jury that as to Counts 1, 2 and 3 there was no regulation authorizing the appellant to sell wild ducks and wild geese. As to Count 4, he instructed that the total number of wild ducks which a person might have in his possession at that time was eight and the number of wild geese five. The scope of the relevant regulations was thus clearly defined for the jury. By 16 U.S.C.A. § 704 Congress authorized the Secretary of the Interior to adopt regulations with reference to the possession and sale of wild ducks and wild geese. 44 U.S.C.A. § 305 requires that all such regulations be published in the Federal Register. § 307 of the same title provides that the contents of the Federal Register shall be judicially noticed. We find no error in the trial court's taking judicial notice thereof and instructing the jury with reference to such regulations. See, Caha v. United States, 1894, 152 U.S. 211, 221–222, 14 S.Ct. 513, 38 L.Ed. 415.

■ As for the claim that the jury was not properly instructed with respect to requisite specific intent, it is clear that the trial court, after directing attention to the first three counts of the indictment and calling attention to the fact that each charged the defendant with a felony, specifically referred to the fact that in each count it was charged that the appellant "did knowingly, willfully, unlawfully and feloniously sell * * *." He instructed that the word "feloniously" meant "with criminal intent" and that "to do an act feloniously means to do willfully something which the law denounces as a major crime, a felony." He also instructed as follows:

"Unlawfully means contrary to the law; hence, to do an act unlawfully means to do willfully something which is contrary to law.

"An act is done willfully if done voluntarily and purposely and with specific intent to do that which the law forbids, that is to say, with bad purpose, either to disobey or to disregard the law.

"The word knowingly was used, of course, to insure that no one would be convicted for an act done because of mistake or inadvertence or other innocent reason."

As to Count 4, a misdemeanor, it was charged that the appellant

"* * * did knowingly, willfully, and unlawfully have in his possession more than the prescribed limit of said wild ducks and wild geese, * * *."

It has long been held that under the Migratory Bird Treaty Act, 16 U.S.C.A. §§ 703–711, it is not necessary that the government prove that a defendant violated its provisions with guilty knowledge or specific intent to commit the violation. Nevertheless, the trial court in the instant case did instruct with reference to guilty knowledge and specific intent. We find no error whatsoever in the court's instructions. Appellant received an instruction more favorable than that to which he was entitled.

█ Appellant's fourth point has to do with the question of entrapment. Appellant states:

"The law recognizes two kinds of entrapment, unlawful entrapment and lawful entrapment. Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers to commit a crime, he is entitled to the defense of unlawful entrapment, and the government then has the burden of proving lawful entrapment."

Unlawful entrapment is the solicitation of an otherwise innocent person to commit a crime solely for the purpose of prosecution. It arises where the criminal purpose or design originated in the minds of government officials and such criminal purpose or design is implanted in the mind of an otherwise innocent person, the object being his prosecution. In the much-quoted case of Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, the Supreme Court held that under the evidence in that case the question of entrapment should have been submitted to the jury. Mr. Chief Justice Hughes, speaking for the court, stated at pages 441–442 of 287 U.S., pages 212–213 of 53 S.Ct.:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. Grimm v. United States, 156 U.S. 604, 610, 15 S.Ct. 470, 39 L.Ed. 550; Goode v. United States, 159 U.S. 663, 669, 16 S.Ct. 136, 40 L.Ed. 297; Rosen v. United States, 161 U.S. 29, 42, 16 S.Ct. 434, 40 L.Ed. 606; Andrews v. United States, 162 U.S. 420, 423, 16 S.Ct. 798, 40 L.Ed. 1023; Price v. United States, 165 U.S. 311, 315, 17 S.Ct. 366, 41 L.Ed. 727; Bates v. United States, C.C., 10 F. 92, 94, note, page 97. United States v. Reisenweber, 2 Cir., 288 F. 520, 526; Aultman v. United States, 5 Cir., 289 F. 251. The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."

Testimony in this case indicates that Luther E. Miller, government investigator, had been sent by the Department of the Interior into certain territory "to make investigation on commercialization of water fowl"; that as the result of his investigation he went into a tavern operated by the appellant Rogers in Rulo, Nebraska. The time was October 25, 1963, the opening day of the hunting season. Miller testified:

"I told him [Rogers] that he had been recommended to me that I could buy some ducks and geese from him and I asked him if he had anything and he said, 'I don't have a thing right now,' that the place is full of game wardens all around the area that day

and the ducks and geese hadn't really moved in and he might be able to fix me up later on. And then I asked him what he got for his ducks and geese and he quoted me a price of two dollars fifty cents for a snow geese [sic] and blue geese and five dollars for Canadas, and then he said, 'How many do you think you can use?' And I said, 'Well, how do you sell them?' He said, 'I think I can furnish you up to as many as fifty on the blues and snows.' I said, 'How about ducks?' He said, 'Well, I'll make them to you right.' And so I told him, I said, 'Well, if you'll make them right, I'll buy quite a few ducks,' after he had quoted me the price on the geese. And I asked him how I might be able to get in touch with him and let him know when I was going to come back and he said I could just write him in care of Rulo, Nebraska, everybody knew him there and he'd get the letter or what-have-you that I might send to him.

"Q. You didn't buy any ducks or geese from him at this time?

"A. No, sir, he said he didn't have any at that time because game wardens were there and the ducks and geese hadn't really moved in yet. After the game wardens all moved out, everything would be quiet and he would start having ducks and geese."

Miller's testimony established that subsequently and on the dates referred to in the indictment he purchased wild ducks and wild geese, paying the appellant therefor. On one occasion the appellant asked for and received an advance of $100 against the purchase of wild ducks and wild geese to be provided in the future. It is the appellant's contention that this testimony cast the burden on the government of proving lawful entrapment and that in the absence thereof a verdict should have been directed in appellant's behalf. Appellant had entered a plea of not guilty. That entrapment was to be used as a defense was not disclosed in the trial of the case until the appellant testified in his own behalf. It would only have been proper for the government to disclose that it had reasonable grounds for believing appellant was in the business of unlawfully selling ducks and geese after the defense of entrapment was interposed. (See, Neill v. United States, 8 Cir., 1955, 225 F.2d 174, 177–178, where this court reversed and directed a new trial where the government was allowed to anticipate an unlawful entrapment defense by introducing testimony to the effect that it had reasonable grounds for believing that the defendant was in the unlawful business of selling narcotics.) Subsequently, in rebuttal, the government was allowed to introduce the testimony of Fred Drummond to the effect that he and another agent for the Missouri Conservation Commission on October 25, 1963, the same date Miller first talked with the appellant, had also talked with the appellant in his tavern in Rulo. Drummond testified that they had told the appellant that they wanted to buy water fowl and that one "Flunk" Dunnigan had vouched for them, in response to which appellant said that if "Flunk" sent them it was all right. They discussed how many water fowl were needed and the price, $2.50 for mallards and $5.00 for Canadian geese. The appellant told them that he had no birds at the time but it would be easier to get them within a week or ten days.

■■ Appellant claims that it was error to admit the testimony of the government witness Fred Drummond. We do not agree. The testimony of Drummond clearly went to the question of intent of the appellant and to his defense that he had been unlawfully entrapped into commission of the offenses charged. We think it was highly pertinent and relevant to the issues and that it assisted the jury in determining whether or not the appellant was the innocent victim of unlawful entrapment. We further hold that under the evidence in this case the question of whether or not the appellant had been unlawfully entrapped was clearly one of fact for the jury. See, Masciale v. United States, 1958, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.

2d 859, 861, rehearing denied, 357 U.S. 933, 78 S.Ct. 1367, 2 L.Ed.2d 1375. We have read the court's instructions in their entirety. The court carefully instructed with reference to lawful and unlawful entrapment and clearly left the question up to the jury, where it was resolved against the appellant.

Appellant lastly complains of the trial court's summarization of the evidence and his comments thereon. As stated, we have read the charge in its entirety and find that while Judge Duncan did comment on the evidence, as was his right, he carefully and meticulously instructed the jury that theirs was the duty to determine all questions of fact, and that they were not to take his statements as binding or conclusive but that theirs was the sole right to pass upon the facts as they found them from the evidence. We find no error in the court's instructions. An examination of this entire record indicates that the appellant received a fair and full trial; that the evidence of his guilt was substantial; and that no prejudicial error was committed.

Affirmed.

LAY, Circuit Judge (dissenting).

I respectfully dissent. I concur with the majority in disposing all points of error raised except in my opinion the court's comments constituted prejudicial error.

I cannot agree with the majority that the abstract charge to the jury clears the mind of the juror of the lower court's prejudicial comment. This reasoning is used in many cases, but in my opinion fails to challenge the evil of the situation and in fact, invites continued abuse.

Today we are constantly concerned the powers of government do not encroach upon the fundamental liberties of the individual. It is almost axiomatic as government grows there exists a lesser concern for these rights. The application of the Bill of Rights to the Fourteenth Amendment is reassuring to say the least. The courts above all must remain the guardians and watchdog of these individual rights. We are properly concerned with the early stages of arrest and arraignment,[1] freedom from unreasonable searches and seizures,[2] the right to remain silent and not become a witness against one's self,[3] the right to be represented by counsel,[4] the right to have a jury fairly selected,[5] to have an impartial forum for the trial,[6] and even with fair pre-trial comment by the press.[7] The concept of *"fair trial"* is always paramount.

It seems to me all of this is naught if the trial judge becomes the prosecutor by unfair comment in the trial itself. This is cognate to a doctor carefully taking precautions to innoculate a person to prevent a disease and once this being assured shooting the patient in the back. The courts above all must practice what we command others to do.

The influence of a trial judge upon an average juror needs no further discussion. Every trial lawyer is properly over-sensitive to the trial court's unwarranted intrusion into an adversary proceeding as an advocate. One argumentative comment (even though based on the evidence) by the court can overcome all other efforts to guarantee a defendant a fair trial. It can erase a week's testimony or hours of advocacy skill. Such comment can pervade the entire atmosphere of fairness so as to

---

1. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

2. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

5. Rabinowitz et al. v. United States, 366 F.2d 34 (5th Cir.) (decided July 20, 1966).

6. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1960).

7. Estes v. State of Texas, 381 U.S. 532, 86 S.Ct. 1628, 14 L.Ed.2d 543; Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.

deprive a defendant of due process of law. It is a subterfuge to say a general exculpatory charge can remove the prejudice. Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946). This court has held that if a trial judge comments on one side of the evidence he should do so on the other side. Stoneking v. United States, 232 F.2d 385 (8 Cir. 1956); Boatright v. United States, 105 F.2d 737 (8 Cir. 1939).[8]

In the present case the court instructed upon entrapment, but his comments were tantamount to removing consideration of this issue from the jury. This clearly was prejudicial error. To state that it is not minimizes the trial judge's role as "governor" of the case and overlooks the profound respect the judge properly commands from a jury. The court made the following comments:

"Now, members of the jury, it is my recollection of the testimony that a fixed price [9] was prescribed by this defendant for those ducks and those geese. There is evidence that you might take into consideration in determining whether this was an act of whether he was entrapped or whether or not he had given thought to the matter before selling, if he knew what the price was, the going price for ducks and geese in that area.

"There is another matter in the case, it seems to me, that should be brought to the attention of the jury, that is the testimony of Mr. Drummond. That testimony was produced here in rebuttal solely for the purpose of rebutting the statement of the defendant that he had never talked to anybody else concerning the sale of ducks prior to the time he talked to the Witness Miller, if he did talk to him.

"Another fact that the jury might take into consideration in determining whether or not this was entrapment was that the agent from Illinois, the undercover agent, and the other agent, from South Missouri converged upon this particular area at the same time and came into the tavern on the same evening with the same purpose in mind. What led them there? You are entitled to take into consideration your common experiences in the affairs of life in determining what this evidence is worth, what it means to you. So they were there and why were they there in this particular tavern for the purpose of seeking to buy wild ducks and geese.

"Now let's consider for a moment the evidence with respect to the knowledge of this defendant as to whether it would be a violation of the law to sell wild ducks and wild geese, that has been brought to your attention by counsel, that the question was mentioned several times that the game wardens were in the area, the area was hot, they were there and therefore they have to be careful, and he was keeping them in Missouri because he knew how to operate over in Missouri. Those are the facts and circumstances which it seems to me the jury might take into consideration in determining the question of the wilfulness, know-

8. In Cook v. United States, 18 F.2d 50 (8 Cir. 1927), the Court found error where the judge commented on the veracity of one of the witnesses and stated that, "I am of the opinion that this conspiracy existed as charged in this indictment from this evidence introduced * * *" The judge even cautioned the jury that this was only his opinion. The Court said:
   "These cases cannot all be harmonized, but we think the line of demarcation between what a court may say to the jury in a criminal case in expressing his opinion on the facts, and what he may not say, is to be drawn between mere expression of opinion not partaking of such argumentative nature as to amount to advocacy, leaving to the jury absolute freedom to determine the facts, and such discussion as amounts to an argument and makes the court in fact an advocate against the defendant. A trial judge is not merely a moderator or umpire; neither is he an advocate." 18 F.2d at 52.

9. This is the government's version and is denied by the defendant.

ingly, and so forth that I have used in these charges here in selling these wild ducks and these wild geese, whether he was lured into it or whether he did it for the money and because he was asked to sell it and he had the willingness to do it. Now, those are things that pertain to the first three counts of this indictment.

"Now, members of the jury, I am going to express an opinion to you about the fourth count of this indictment. Whatever your finding may be with respect to the guilt or the innocence of the defendant under the first three counts of this indictment, that is, the sale of wild ducks and wild geese, this pertains to the charge of possession. Can you say from this evidence that the law of entrapment, believing and insisting that he did it because he was entrapped, applies to the possession, was he entrapped into providing and possessing 31 wild ducks and 15 wild geese, was he entrapped in doing that. That's for you to say, it's not for me to say. But if you find and believe that he knowingly, willfully, and unlawfully did it, he is guilty and if he had them it was unlawful, he had no right to have that many wild ducks and wild geese. Did he know he had them and was it done willfully. Under the law as I have read it to you, he had no right to have those."

It is difficult to believe this is not the verbatim argument made by the prosecutor on behalf of the government.

The majority points out that the evidence of the defendant's guilt was substantial. This is a poor test for a fair trial. This also substitutes the court's judgment for the jury.[10] It clearly usurps the jury's fact-finding power. Why, the jury, if the trial judge or the

appellate court can determine guilt on the basis of sufficiency of evidence? When the trial judge's comments assume the stature of argument of the government, in my opinion it denies the defendant "effective assistance of counsel". It is rhetorical to ask who has the most persuasion with the jury: the trial judge or the defendant's attorney? Why must we even pose the question?

The clarity of the evidence in this case does make the trial court's comments completely unnecessary and baffling to me. I would reverse for a fair trial with fair instructions and fair comments.

---

10.  See Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485 (1946). The trial court there said to the jury, "Did she steal them? Who did if she didn't? You are to decide that."

The Supreme Court held that this was error. The Court said, "Nor is it enough for us to conclude that guilt may be deduced from the whole record. Such a course would lead to serious intrusions on the historic functions of the jury under our system of government." 328 U.S. at 638, 66 S.Ct. at 1175.